UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:19-cr-00007-JAW |
| v. | ) | |
| | ) | |
| DOUGLAS GORDON | ) | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE FOR DETERMINATION THAT EXHIBITS QUALIFY AS ADMISSIBLE RECORDS UNDER RULE 803**

In anticipation of trial on charges of criminal copyright infringement and mail fraud, the Government moves in limine for a pre-trial ruling on the admissibility of certain trial exhibits under Federal Rules of Evidence 104(a), 803(6), 803(8), and 902(11). *Gov't's Mot.* in Limine *for Determination that Exs. Qualify as Admissible Rs. Under Rule 803* (ECF No. 59) (*Gov't's Mot.*).

I.     **BACKGROUND**

On June 3, 2019, the Government filed a motion in limine to determine whether certain exhibits qualify as admissible records under Rule 803 of the Federal Rules of Evidence. *Gov't's Mot.*; *id.*, *Attachs.*, Exs. 1-10; *Additional Attachs.* (ECF No. 60), Exs. 11-18; *Additional Attachs.* (ECF No. 61), Exs. 19-28.  On June 28, 2019, Mr. Gordon filed his response to the Government's motion in limine. *Def.'s Resp. to Gov't's Mot.* in Limine *that Exs. Qualify as Admissible Rs. Under Rule 803* (ECF No. 62) (*Def.'s Opp'n*).  On July 12, 2019, the Government filed its reply. *Reply of United States to Def.'s Resp. to Gov't's Mot.* in Limine *for Determination That Exs. Qualify as Admissible Rs.* (ECF No. 65) (*Gov't's Reply*).

## II.    THE PARTIES' POSITIONS

### A.    The Government's Motion in Limine

The Government says various items it intends to offer at trial qualify under the business and public record exceptions of Rule 803. *Gov't's Mot.* at 2. The Government asserts that the focus of the business records exception is "the requirement that the records be made in the course of and as a regular practice of a regularly conducted business activity." *Id.* at 3. It continues, "records kept in the course of regularly conducted activity are admissible unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* The Government notes that because Rule 803(6) refers to Rule 902(11), for admissibility purposes, it may submit certificates of custodians and/or other qualified witnesses who have attested to the business records instead of calling record custodians as witnesses at trial. *Id.* at 4. Accordingly, the Government asserts, "[i]n order to facilitate the introduction at trial of the records identified below, the Government has established the authenticity of the records, as well as their admissibility under Rule 803(6), through certifications obtained from the custodians of records, as contemplated by that rule." *Id.* at 5.

The Government claims it has satisfied these requirements for all its proffered pieces of business records evidence. *Id.* at 7 (referring to Exhibits One through Twenty-A). The Government contends that the records offered were not generated for a criminal prosecution and are non-testimonial; rather, they were prepared in the ordinary course of regularly conducted activities, and the attached certifications

satisfy the requisite foundational requirements. *Id.* at 7-8. Furthermore, the Government avers it has fulfilled Rule 902(11)'s procedural safeguards by providing Mr. Gordon advance written notice of its intent to submit these documents and furnishing the certifications and proffered documents to him. *Id.* at 8. The Government seeks this preliminary determination to relieve itself of "the burden of transporting record custodians, many of whom are employed out-of-state, to Bangor, Maine . . .." *Id.* at 8-9.

The Government also addresses the public records exception to the hearsay rule under Federal Rule of Evidence 803(8). *Id.* at 9. The Government notes that "[u]nder Federal Rule of Evidence 902(4)(A), a public record is self-authenticating when the copy is certified as correct by a custodian or another person authorized to make the certification." *Id.* According to the Government, a proper certification obviates the requirement of foundational testimony by a record custodian as to a document's authenticity. *Id.* at 10. The Government argues its six exhibits submitted as public records satisfy Rule 803(8)'s requirements and its attached certifications comply with Rule 902(4)(A). *Id.* at 11 (referring to Exhibits Twenty-One through Twenty-Six). Moreover, the Government has given Mr. Gordon advanced notice of the Government's intent to submit these documents at trial and has also allowed him to inspect the proffered records. *Id.* at 11-12.

The Governments claims that "[c]ertificates of copyright registration made before or within five years after first publication of the motion pictures are *prima facie* evidence in any judicial proceedings of the validity of the copyrights and of the

facts set forth in the certificates." *Id.* at 12 (citing 17 U.S.C. § 410(c)). The Government assets that certificates of copyright registration are self-authenticating and that extrinsic evidence as to their authenticity is not necessary as a condition precedent to admissibility because these documents qualify as domestic public documents under seal. *Id.* at 12-13. As a result, the Government says, the certificates of copyright registration for ninety-two referenced motion pictures contained in Exhibit Twenty-Seven and the certificate of non-existence contained in Exhibit Twenty-Eight are not excludable as hearsay and should "be properly admitted in the absence of any credible evidence from the Defendant disproving the validity of the copyrights." *Id.* at 13. The Government adds that the certificates of copyright registration may be introduced through the testimony of Special Agent Loren Thresher and the certificate of non-existence may be introduced through the testimony of the case agent. *Id.*

Lastly, the Government asserts that these twenty-eight exhibits raise no Confrontation Clause issues as they were not created for the purpose of a criminal prosecution. It adds that *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny demonstrate no Confrontation Clause implications for these preliminary determinations of the admissibility of these exhibits under business and public records hearsay exceptions pursuant to Rule 104 and Rule 803. *Gov't's Mot.* at 14-19.

## B.    Douglas Gordon's Opposition

Mr. Gordon generally "agrees that the Government has laid out the proper and necessary law for the determination of these matters" but notes some exceptions for specific exhibits. *Def.'s Opp'n* at 1.

Mr. Gordon has no immediate objections to the following Government exhibits: Exhibit Two (Bangor Savings Bank Authorization Resolutions); Exhibit Seven (Charter Communications)[1]; Exhibit Ten (Eastern Maine Healthcare Systems Job Application); Exhibit Twelve (Green Dot Bank Cardholder Information); Exhibit Twenty-Two (CAFRA Seized Assert Claim Form); and Exhibit Twenty-Eight (U.S. Copyright Office Certificate of Non-Existence). *Id.* at 2, 5, 6, 8, 13, 16. Although Mr. Gordon does not have immediate objections to the admissibility of these exhibits, he does reserve all other objections and anticipates objecting to certain interpretations of these exhibits at trial. *Id.*

Mr. Gordon argues that a government agent is not a qualified witness to explain or interpret many of the Government's proffered exhibits and thus, these exhibits are inadmissible under Rule 803(6). *Id.* at 1-3, 8-13, 15. For example, Mr. Gordon objects to the Exhibit One records because "the Government must be able to show some foundational predicate as to what Bancorp is" and he "does not believe that the Government should be able to do this through a Government agent." *Id.* at 1. Mr. Gordon does not object to the authenticity of these business records in theory, if the Government laid the foundation differently. *Id.* at 1-2. Mr. Gordon applies this

---

[1] Mr. Gordon "anticipates objecting to interpretation of the exhibit by a Government agent[,]" however. *Def.'s Opp'n* at 5. This objection does not go to admissibility but to probative value and will be addressed in the ordinary course at trial.

argument to Exhibits One, Four, Five, Nine, Eleven, Fourteen, Fifteen, Fifteen-C, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-A, Twenty-One, Twenty-Five, and Twenty-Six.  *Id.*  Mr. Gordon's "primary concern is that the Government will seek to leverage the Court's ruling on the authenticity of any particular records as meaning that a case agent can testify as [to] the *meaning* of any particular record." *Id.* at 16-17 (emphasis in original).

Mr. Gordon also makes objections to a number of the exhibits on other grounds, as outlined in the discussion of the Government's reply below.  Mr. Gordon does not assert any objections based on Sixth Amendment Confrontation Clause grounds.

### C.    The Government's Reply

The Government asserts that a qualified witness is not needed to establish authenticity for the records because the certificates of authenticity meet the business-record requirements under Rule 803(6)(A)-(C).  *Gov't's Reply* at 3.  Regardless, the Government argues, government agents can be qualified witnesses for the purposes of Rule 902(11) and Rule 803(6).  *Gov't's Reply* at 3-6 (discussing case law from other circuits in which courts found case agents to be qualified witnesses and allowed them to provide foundation testimony for company records when they understood the record-keeping system and gave detailed testimony).  The Government points out that Special Agent Thresher has been investigating this case since January 27, 2014, and can "describe business and public records based on his personal knowledge and rationally based on his perception."  *Id.* at 6.  For example, regarding Exhibit One, the Government states that Mr. Gordon has not challenged the certificate of

authenticity, which itself establishes the business-record factors set forth in Rule 803(6)(A)-(C). *Gov't's Reply* at 9. The Government then reiterates that Special Agent Thresher is a qualified witness because "a proper foundation may be laid, in whole, by the testimony of a Government agent, investigator, or other person outside of a business organization whose records are sought to be admitted so long as the witness used to lay the foundation is familiar with the organization's record-keeping system." *Id.* at 9 (citing *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986)). The Government promises that Special Agent Thresher can "describe in general how Bancorp identifies each customer's account and how the company's record-keeping system makes entries noting deposits and expenditures within such accounts" if necessary. *Id.* at 9-10.

The Government then discusses Mr. Gordon's objections to each exhibit in turn. The below list details Mr. Gordon's immediate objections on grounds other than Special Agent Thresher being a qualified witness, and the Government's responses. The Government ends by asserting that Mr. Gordon has waived any Confrontation Clause arguments regarding these exhibits. *Id.* at 34.

### 1. Exhibit Three: Bangor Savings Bank Check Deposit Copies

Mr. Gordon argues that Exhibit Three is "ill-defined" because it is "unclear what the parameters of this exhibit are, what the date range of documents included is, and whether the records are complete or a selected portion of records and how, if less than the full range of documents within the request, the documents included within the exhibit were selected." *Def.'s Opp'n* at 2. For these reasons, Mr. Gordon

suggests that the Court should require sufficient foundational testimony before admitting this exhibit. *Id.*

The Government refutes the contention that Exhibit Three is poorly defined by stating that "[a] comparison of Government Exhibit No. 3 to the BSB check deposit copies produced as discovery material reveals the Government has included only those pages which show copies of checks made payable to FindrareDVDs.com." *Gov't's Reply* at 10. The Government adds that Special Agent Thresher's testimony will be sufficient to provide a proper foundation for the reasons discussed above. *Id.*

### 2. Exhibit Six: Better Business Bureau Complaints

Mr. Gordon objects to the admittance of the Better Business Bureau (BBB) Complaints on the grounds that they are hearsay, the source of dissatisfied customers indicates a lack of trustworthiness under Rule 803(6), and they are more prejudicial than probative under Rule 403. *Def.'s Opp'n* at 3-5. Mr. Gordon asserts that the second and third reasons apply even if the complaints are being used only to show that Mr. Gordon was notified of the complaints. *Id.* Mr. Gordon also distinguishes *United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985), a case cited by the Government to support the use of the complaints to show notice, by stating that the defendant in *Chavis* was asserting a "good faith" defense and the records were used in rebuttal only. *Def.'s Opp'n* at 4-5.

The Government states that the complaints are not hearsay (within a double hearsay situation) because they are being offered to "reveal the customers' then-existing state of mind" and show that Mr. Gordon was on notice that his customers

were dissatisfied, rather than for the truth of the matter asserted. *Gov't's Reply* at 12 (citing *United States v. Southland*, 209 F. App'x 656, 658 (9th Cir. 2009); *Chavis*, 772 F.2d at 105). The Government asserts that the complaints will show that from 2014 through 2017, Mr. Gordon, FindrareDVDs.com (FRD), and Lost Movies Found (LMF) repeatedly received email messages from customers complaining of "bootleg," "homemade," "shoddy," and "scam" copies. *Id.* at 12-13. The Government adds that some of the documents in Exhibit Six contain a "Complaint Timeline" that shows that the online business responded and took action. *Id.* at 13. According to the Government, "[b]arring admission of the BBB complaints would prevent the Government from meeting its burden and unfairly deprive it of evidence that Mr. Gordon had for years been notified of complaints but nonetheless intentionally continued engaging in such activities." *Id.*

### 3. Exhibit Eight: Citibank NA Credit Card Statement

Mr. Gordon objects to the credit card statement on relevancy grounds because the redaction makes it unclear how the statement pertains to Mr. Gordon. *Def.'s Opp'n* at 5.

The Government explains that "the Citibank record is the monthly statement of a Special Agent who used his undercover identity and credit card account to purchase a DVD movie from one of the Defendant's online businesses." *Gov't's Reply* at 14. The Government maintains that there is no reason the identity and account number of the agent are relevant to the purchase. *Id.*

### 4. Exhibit Nine: Columbia Broadcasting System (CBS) Notices of Copyright and Infringement

Mr. Gordon objects to the admittance of the three cease-and-desist email messages from CBS to the FRD email account concerning copyright infringement contained in Exhibit Nine. *Def.'s Opp'n* at 6. He calls into question the accuracy of the business record because of language in a letter from the record custodian accompanying the certificate of authenticity. The letter states that Charter's records are "subject to human error," that "Charter cannot always guarantee the accuracy of such records," and that one "should not rely solely on this information." *Id.* Mr. Gordon also objects to a Government agent testifying to the meaning of the record.

The Government argues that there is no connection between Charter and CBS, and thus that Mr. Gordon has not "provide[d] a valid reason for challenging the accuracy of the three CBS email notices." *Gov't's Reply* at 15. The Government asserts the same argument regarding the use of a Government agent. *Id.* It adds that Mr. Gordon has not identified any way Special Agent Thresher's testimony will unfairly prejudice him or otherwise confuse issues or mislead the jury under Rule 403. *Id.*

### 5. Exhibit Eleven: Google LLC Subscriber Information, Customer Confirmations, Messages from and to Customers, Google Alerts

Mr. Gordon objects to the thirty-five-thousand-page exhibit contained in Exhibit Eleven because it "is so problematic that it should not be allowed." *Def.'s Opp'n* at 7. Though the records "might properly be authentic business records," Mr. Gordon argues, the Government should use a computer expert or other individual with the requisite knowledge to interpret these "voluminous computer records." *Id.*

Additionally, "the Government should be required to specify particular entries and the particular purpose for which the entry is being offered, what, if any, relevance there may be to the case; and finally, how the Government intends to present this testimony to the jury." *Id.* Mr. Gordon anticipates objecting to the records' relevance but has not done so yet.

The Government responds that the records contained in Exhibit Eleven are Google LLC's response to "a search warrant to disclose the contents of email accounts associated with two email addresses including all records and information regarding identification of the account." *Gov't's Reply* at 16. According to the Government, "there is nothing particularly complex" about the records in Exhibit Eleven that prevents a Government agent from testifying about them. *Id.* The Government argues that there is no need to provide specifics about what entries are being used and how because relevance is not pertinent to the Court's preliminary determination regarding their authenticity and classification as business records. *Id.* The Government then explains that it plans to use the content of the email messages as evidence that Mr. Gordon was placed on notice regarding his infringing and fraudulent activities and suggests that Mr. Gordon seek a curative instruction or redaction if he is concerned about prejudice or jurors accepting the complaint statements as truth. *Id.* at 17.

## 6. Exhibit Thirteen/Thirteen-A: Neustar, Inc. Subscriber Information/Consolidated Communications Subscriber Information

Mr. Gordon objects to the certification of this telephone subscriber record because "[t]he connection between Neustar and Fairpoint is unclear from the certification." *Def.'s Opp'n* at 8. Mr. Gordon continues, "[t]he Government should not be allowed to use the business record exception to bless this unholy union." *Id.*

The Government responds by providing a new exhibit, Exhibit Thirteen-A, to account for the change in ownership and agents for the communication service provider. *Gov't's Reply* at 17-18. The new record is from Consolidated Communications and is certified by Quinn Clemmons, an authorized agent for Consolidated Communications. *Id.* at 18. The Government asserts that Special Agent Thresher can further testify about its contents if necessary. *Id.* Thus, according to the Government, it satisfies the business-record factors. *Id.*

### 7.  Exhibit Fifteen: Square (Weebly) Subscriber Information

Mr. Gordon objects to Exhibit Fifteen's authenticity and admissibility because "[n]o certification pursuant to the rule is attached and the document appears to be a creation of the Government." *Def.'s Opp'n* at 8. Mr. Gordon also objects to a Government agent testifying to the meaning of the exhibit. *Id.*

The Government responds that a proper certificate of authenticity is attached and that it did not create Weebly's Admin Dashboard. *Gov't's Reply* at 19. "Any contention that the Federal government created the subscriber information set forth within Government Exhibit Number 15 is speculative and based entirely on conjecture." *Id.*

### 8.  Exhibit Fifteen-A: Spreadsheet

Mr. Gordon objects to Exhibit Fifteen-A's authenticity and admissibility because, as above in Exhibit Fifteen, "[n]o certification pursuant to the rule is attached and the document appears to be a creation of the Government." *Def.'s Opp'n* at 9. Mr. Gordon adds that the spreadsheet does not seem to fall under Square's original certification under Exhibit Fifteen. *Id.*

The Government responds that the spreadsheets contained in Exhibit Fifteen-A "are among the records requested from Square/Weebly which pertain to communications and financial transactions occurring in relation to the LMF website" and are part of the original certification. *Gov't Reply* at 19-20. Though Special Agent Thresher "identified and separated certain transactions set forth on the spreadsheets along with other documents," the Government argues, "[h]is use of only part of the information provided by Square/Weebly does not amount to a creation by the Government and is not a valid basis for preventing use of such information." *Id.* at 20.

### 9. Exhibit Fifteen-B: Spreadsheet

Mr. Gordon's objections and the Government's reply are the same as under Exhibit Fifteen-A. *Def.'s Opp'n* at 9; *Gov't Reply* at 19-20.

### 10. Exhibit Fifteen-C: Account Dossier

Mr. Gordon objects to the admissibility of Exhibit Fifteen-C, including an "Account Dossier" that is marked as Exhibit Sixteen in the documents. *Def.'s Opp'n* at 9-10.

The Government responds that it did not file an Exhibit Fifteen-C and Exhibit Fifteen does not include an Account Dossier. *Gov't's Reply* at 20.

### 11. Exhibit Seventeen-A: Stripe, Inc. Spreadsheet

Mr. Gordon objects to Exhibit Seventeen-A's authenticity and admissibility because it is not certified properly. *Def.'s Opp'n* at 10. Mr. Gordon argues that "the certification on Exhibit 17 does not contain sufficient information for the Defendant to determine the connection" and that the spreadsheet "appears to be an analysis by the Government which may or may not be based on data provided by Stripe, but which is not part of Stripe's certification." *Id.*

The Government asserts that the certification of authenticity in Exhibit Seventeen applies to Exhibit Seventeen-A because "[a] careful comparison of Exhibit Numbers 17, 17A and 17B will show that Exhibit Numbers 17A and 17B contain parts of the information set forth within Exhibit 17." *Gov't's Reply* at 21.

### 12. Exhibit Seventeen-B: Stripe, Inc. Spreadsheet

Mr. Gordon's objections and the Government's reply are the same as under Exhibit Seventeen-A. *Def.'s Opp'n* at 10-11; *Gov't's Reply* at 21.

### 13. Exhibit Eighteen: Text Now, Inc. Mobile Cell Phone Service Subscriber Information

Mr. Gordon objects to the admissibility of this record on relevance grounds because he "is unfamiliar with 'Lucas Knight'" and it "is redacted in such a way that the Defendant cannot determine who the record may refer to." *Def.'s Opp'n* at 11. Mr. Gordon also objects to a Government agent interpreting these records, as above. *Id.*

The Government responds that it is seeking "entry of an order *in limine* finding the authenticity and admissibility of Exhibit No. 18 subject to a determination of the exhibit's relevance at trial," and thus that relevance is not a proper ground for objection. *Gov't's Reply* at 21. The Government adds that it will show at trial that "Lucas Knight" is Mr. Gordon's pen name. *Id.* The Government argues that Special Agent Thresher can testify about the exhibit for the reasons discussed above. *Id.* at 21-22.

### 14. Exhibit Twenty: Yahoo! Inc. Account Management Tool, Customer Email Messages

Mr. Gordon objects to the admissibility of the records in Exhibit Twenty on Rule 403 grounds:

> [T]o the extent the exhibit contains verbatim complaints from other individuals outside of Yahoo's organization complaining about the Defendant or persons or entities associated with the Defendant, the danger is that the jury might take these subjective complaints as true and that such complaints will be lent an air of authority by their admission as an exhibit.

*Def.'s Opp'n* at 12. Mr. Gordon also objects to a Government agent testifying to the meaning of the information contained in the Yahoo exhibit. *Id.*

The Government concedes that falling within the business record exception to hearsay is not sufficient alone to make a document admissible. *Gov't's Reply* at 22. It asserts that it is introducing the complaints to show that Mr. Gordon was on notice regarding his infringing and fraudulent activities, rather than for the truth of the complaints themselves, and thus that the complaints are not hearsay and are admissible. *Id.* at 22-23 (citing, among other cases, *Goldenson v. Steffens*, 2014 WL

12788001 at *50 n.244 (D. Me. Mar. 7, 2014), and *Willinghan v. Town of Stonington*, 947 F. Supp. 2d 164, 168 n.4 (D. Me. 2012)).  The Government adds that the customers' perceptions in their emails are not hearsay (within a double hearsay situation) because they reveal the customers' then-existing state of mind.  *Id.* at 23 n.9.  The Government suggests that a curative instruction will satisfy Rule 403 and prevent unfair prejudice.  *Id.* at 23.  The Government also argues that Special Agent Thresher is a qualified witness for the reasons discussed above.

### 15. Exhibit Twenty-A: Yahoo! Inc. E-Mail Orders

Mr. Gordon objects to the admissibility of the email order records in Exhibit Twenty-A for the reasons listed above in Exhibit Twenty.  *Def.'s Opp'n* at 12.

The Government explains that it was not originally seeking a decision on the admission of the content of the email orders, but that it is now asking for a ruling on the content as a result of Mr. Gordon's objection.  *Gov't's Reply* at 24.  The Government asserts that the records are admissible because (1) they are nonhearsay adoptive admissions under Federal Rule of Evidence 801(d)(2); (2) they are not hearsay because the orders encompass verbally, legally operative acts ("setting forth, as a result of documented online payments, rights of customers to obtain DVD movies and obligations of FRD to deliver the movies"); and (3) certain information contained in the records constitutes business records.  *Gov't's Reply* at 24-26.

### 16. Exhibit Twenty-Three: Internet Crime Complaint Center Referral Forms

Mr. Gordon states that the referral forms in Exhibit Twenty-Three are not admissible because they do not fall within the public records exception to the hearsay

rule. *Def.'s Opp'n* at 13. "The records might arguably set out the office's activities, but do not set out matters which the reporter had a legal duty to report." *Id.* Mr. Gordon argues that the complaints contained in Exhibit Twenty-Three are "optional and discretionary consumer complaints, not matters under which people were legally bound to report to the Government." *Id.* at 13-14. Thus, he asserts, these records should not be admissible "for the same reason that the hearsay exceptions based on indicia of reliability in some circumstances do not make cranky Internet complaints reliable simply because the Government decides to make them a 'business record'." *Id.* at 14.

The Government asserts that admission of the twelve reports of suspected fraudulent activity to the Internet Crime Complaint Center (IC3) between 2007 and 2016 is proper under Rule 803(8)(C). *Gov't's Reply* at 27-28. Due to "the assumption that a public official will perform his duty properly," *id.* at 28 (quoting *Ellis v. Int'l Playtex, Inc.*, 745, F.2d 292, 300 (4th Cir. 1984)), the Government argues that "in the absence of any evidence from the Defendant indicating the referrals lack trustworthiness that the forms should be admitted under the public documents and business record exceptions." *Id.* at 29. The Government makes this argument despite the facts that "the source of content within the IC3 forms has been provided by customers of the Defendant's business, not any public officer" and "Mr. Gordon was not directly placed on notice by IC3." *Id.* at 28. The Government also argues that there is no double hearsay issue because the customer-supplied information is being offered for the then-existing state of mind of the customers. *Id.* The Government

notes that it introduced similar IC3 complaints into evidence during the trial of Sidney Kilmartin in August 2017. *Id.* at 29; *see United States v. Kilmartin*, 2017 WL 3668114 at *21-22 (D. Me. Aug. 24, 2017).

In the alternative, the Government asserts, the IC3 forms should be provisionally admitted as Rule 404(b) evidence, subject to a final ruling at the close of evidence. *Id.* at 29. The Government argues that the forms show commonality among the victims that demonstrates that Mr. Gordon "intended and planned to continue selling the counterfeit discs and that his illegal activities were not the product of a mistake or accident." *Id.* at 30. The Government denies Rule 403 unfair prejudice concerns because "the complaints are remote in time and in some cases involve the use of separate websites," and submits that a limiting instruction would sufficiently curb any unfair prejudice. *Id.*

### 17. Exhibit Twenty-Four: Maine Attorney General Civil Investigative Demand, Complaints, Consumer Data Entry, Letters

Mr. Gordon's objections are the same as under Exhibit Twenty-Three. *Def.'s Opp'n* at 13-15.

The Government argues that the Maine Attorney General records contained in Exhibit Twenty-Four are admissible under the public records exception to the hearsay rule as "records of an office's activities," as shown by the certification of authenticity furnished by the Chief of the Consumer Protection Division. *Gov't's Reply* at 31; *see* FED. R. EVID. 803(8)(A)(i). Given that Mr. Gordon has not shown that the source of information or other circumstances indicate a lack of trustworthiness,

the Government asserts, the records are admissible. *Gov't's Reply* at 31. The Government adds that "the Consumer Protection Division had a duty imposed by law to maintain records of the reported matters and was authorized by law to distribute and collect complaint forms, enter data into its computer system and mediate or otherwise act upon the complaints." *Id.*

Regarding the content of the consumer complaints contained within Exhibit Twenty-Four, the Government notes that it is offering the complaints to show that Mr. Gordon was on notice regarding allegations of unfair trade practices, delivery of DVDs that did not work, and possible copyright violations years before the indictment in this case, not for the truth of the matter asserted. *Id.* at 32. The Government adds that there is no double hearsay issue because the complaints reveal the consumers' then-existing state of mind "and the lack of effect on the recipient." *Id.* The Government submits that a curative instruction advising the jury that the complaints are only offered to show notice will cure any unfair prejudice. *Id.*

### 18. Exhibit Twenty-Seven: U.S. Copyright Office Certificates of Copyright Registration

Mr. Gordon argues that civil rulings on self-authenticating certificates of copyright registration should not be applied to criminal cases due to "their vastly different proof standards." *Def.'s Opp'n* at 15. Mr. Gordon specifically objects to the inclusion of documents (such as document 9893) with certificates of registration issued more than five years after the date of creation, *id.*; *see* 17 U.S.C. § 410(a), and e-mails between Special Agent Thresher and the ILS System. *Def.'s Opp'n* at 16. Accordingly, Mr. Gordon asks that the Government be required to mark the exhibits

within Exhibit Twenty-Seven individually "so as to avoid confusion and a mixing of analysis required as to admissibility." *Id.*

The Government asserts that "[i]t has long been established civil precedent is instructive to criminal copyright statutes." *Gov't's Reply* at 34 n.19 (citing Seventh and Ninth Circuit case law). Addressing Mr. Gordon's specific objections, the Government argues that while the Certificate of Copyright Registration for the one movie Mr. Gordon identifies—*Disney's Halloween Treats*—will not constitute prima facie evidence of the validity of the copyright, "a paper certificate is not required for legal protection of movies and other original works of authorship." *Id.* at 33. The Government continues, "copyright protection attaches on the day such works become fixed in a tangible medium of expression." *Id.* (citing 17 U.S.C. § 102(a); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1160 (1st Cir. 1994)). The Government also points out that "the Defendant does not contend that he possessed copyrights for any of the movies that were offered for sale and sold with use of his websites . . .." *Id.* The Government asserts that Mr. Gordon has not "asserted any basis for requiring the Government to introduce testimony from a Copyright Office record custodian in order to secure admission of each of the Certificates of Copyright Registration into evidence at trial." *Id.* at 34.

## III.  LEGAL STANDARD

The Government "requests that the Court, as provided in Rule 104, make the preliminary determination that the United States has met the foundational prerequisites for admission of the exhibits listed below under Rule 803 and for

authenticity under Rule 902 of the Federal Rules of Evidence." *Gov't's Mot.* at 1 (citing FED. R. EVID. 104(a), 803(6), 803(8), 902).

### A.    Federal Rule of Evidence 104(a)

Rule 104(a) states, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a).  Under Rule 104(a), the Court acts as a gatekeeper, *United States v. Poulin*, 592 F. Supp. 2d 132, 136 (D. Me. 2008), as it determines "whether foundational facts have been established (and, thus, whether particular pieces of evidence are eligible for admission)." *Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003).  Foundational facts are those facts which dictate whether evidence is admissible, which includes "the genuineness of a document or statement, the maker's personal knowledge, and the like." *Id.*  The proponent must establish these foundational facts by a preponderance.  *United States v. Campbell*, 268 F.3d 1, 4 (1st Cir. 2001) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

### B.    Federal Rules of Evidence 803(6) and 803(8)

Rule 803(6) is commonly known as the business records exception and it "authorizes the admission of certain documents under an exception to the usual prohibition against the admission of hearsay statements, that is, statements by an out-of-court declarant offered into evidence to prove the truth of the matter asserted." *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 537 (1st Cir. 2019) (citing FED. R. EVID. 801(c), 802).  Rule 803(6) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.*

"The phrase 'another qualified witness' is given a very broad interpretation." 5 MARK S. BRODIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE § 803.08[8][a] (2d ed. 2019) (WEINSTEIN). A witness does not need to have personally participated in or observed the creation of the record; the witness is qualified if he or she has enough familiarity with the record-keeping system of the entity to understand and explain how the record came into existence. *See United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (holding that someone not employed by the business that created a record could lay foundation for the record's admission through his personal knowledge, inferences, and opinions grounded in personal observation and experience); *United States v. Moore*, 791 F.2d 566, 574-75 (7th Cir. 1986). Thus, federal courts have held that a

Government agent may provide a foundation where the agent is familiar with the record-keeping system. *See, e.g.*, *United States v. Franco*, 874 F.2d 1136, 1139-40 (7th Cir. 1989); *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) ("[T]here is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent . . ..").

Rule 803(8), the public records exception to the hearsay rule, applies to:

A record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

*Id.* The public records exception is premised on the assumption "that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." *Id.* advisory committee note 8.

C. **Federal Rule of Evidence 902**

Rule 902 lists fourteen categories of evidence which are "self-authenticating" and do not require any extrinsic evidence of authenticity as to be admitted. FED. R. EVID. 902. If an item of evidence falls within one of the fourteen categories, it automatically satisfies Rule 901's requirement that "the proponent must produce

evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901. Rule 902 "obviates the need for testimony from a witness, or submission of other extrinsic proof, to demonstrate the genuineness or authenticity of a proffered piece of evidence." 5 WEINSTEIN § 902.02[1].

> The Government specifically cites Rule 902(11) which provides:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

*Id.* "Rules 803(6) and 902(11) go hand in hand." *Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 701 (E.D. Va. 2004). Thus, "Rule 902(11) 'sets forth a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness.'" *Id.* (citing FED. R. EVID. 902(11) advisory committee note). Consequently, Rule 902(11) is "the functional equivalent of testimony offered to authenticate a business record tendered under Rule 803(6) because the declaration permitted by Rule 902(11) serves the same purpose as authenticating testimony." *Id.*

### D. Federal Rule of Evidence 403

Rule 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## IV. DISCUSSION

The Court addresses each exhibit in turn.

### 1. Exhibit One: Bancorp Transaction Records

Assuming the accuracy of the Government's representations, Special Agent Thresher is an appropriate qualified witness because of his personal knowledge of the Bancorp transaction records contained in Exhibit One. *See United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992). The Government has sufficiently established that Special Agent Thresher can describe Bancorp's record-keeping system based on his personal observations.[2] His status as a government agent does not negate his personal knowledge. *See Hathaway*, 798 F.2d at 906. Moreover, the Government's certificate of authenticity, not contested by Mr. Gordon, serves the same purpose as foundational testimony pursuant to Rule 902(11).

### 2. Exhibit Two: Bangor Savings Bank Authorization Resolutions

Both parties agree that Exhibit Two is an authentic business record, and there are no objections. The Court concludes that Exhibit Two is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 3. Exhibit Three: Bangor Savings Bank Check Deposit Copies

---

[2] For purposes of this ruling, the Court assumes as true the Government's representations concerning Special Agent Thresher. *See Gov't's Reply* at 6-8. At bottom, this is a factual determination. As Special Agent Thresher is presumably available, if Mr. Gordon wishes to voir dire Special Agent Thresher outside the presence of the jury either before or during trial and before the Court issues its final ruling on admissibility, the Court will allow him to do so. The Court will discuss this issue with counsel at the September 23, 2019, pretrial conference of counsel.

The parties agree that the Bangor Savings Bank check deposit copies, if "properly defined," are authentic business records. *Def.'s Opp'n* at 2. It is unclear how ill-defined date ranges or parameters would impact a Rule 803(6) analysis; Mr. Gordon has argued that admitting them would be "meaningless," not that they indicate a lack of trustworthiness.[3] *Id.* Thus, the Court concludes that the records contained in Exhibit Three are authentic and admissible, subject to determinations at trial of their relevance.

### 4. Exhibit Four: Bangor Savings Bank Summary of Account

Mr. Gordon's only objection to Exhibit Four concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 5. Exhibit Five: Bangor Savings Bank Checking Account Withdrawals

Mr. Gordon's only objection to Exhibit Five concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 6. Exhibit Six: Better Business Bureau Complaints

Exhibit Six presents two barriers to admissibility in its current form.[4] First, the verbatim customer complaints contained in the exhibit create a concern about the

---

[3] While not necessary to find them admissible, the Court concludes that the records are clearly defined. A review of Exhibit Three and the Government's reply show that, with the exception of one email from October 18, 2010, on the last page of the exhibit, the check deposit copies are from checks made payable to FRD and are in order of date from May 2011 to July 2013.

[4] The Court does not address the double hearsay situation discussed by the Government because the Rule 403 analysis is controlling regardless whether the consumer perceptions fall under a hearsay exception.

source of the information contained in the business record. Mr. Gordon has shown that statements from dissatisfied customers indicate a possible lack of trustworthiness. *See* FED. R. EVID. 803(6)(E). These statements are subjective and, in some cases, appear driven by emotion not fact.

Second, the complaints, in full, create a risk of unfair prejudice that substantially outweighs their probative value. *See* FED. R. EVID. 403. Some of the complaints contain customers' impressions of Mr. Gordon's illegality. For example, Mr. Gordon points to one that says, "[y]ou should be convicted for what you have done." *Def.'s Opp'n* at 5. Others call the business a "scam." *Gov't's Reply* at 13. These comments present a real risk of prejudicing the jury based on legal determinations made by laypersons.

Moreover, the large quantity of complaints is unnecessary to show notice, and thus constitutes cumulative evidence. *See* FED. R. EVID. 403.

Finally, the probative value of each complaint differs significantly: some provide no evidence of notice and others provide full timelines with responses by the business. *Def.'s Opp'n* at 5; *Gov't's Reply* at 13.

Based on what it currently before the Court, the Court cannot admit the complaints contained in Exhibit Six in their present form.[5] If the Government wishes to submit a narrower or redacted group of complaints, the Court will take the submission under consideration.

### 7.    Exhibit Seven: Charter Communications

---

[5]     This ruling pertains to the Government's case in chief. If the Defense opens the door, either through argument or presenting evidence in its case, the Court will reconsider this matter.

Both parties agree that Exhibit Seven is an authentic business record, and there are no immediate objections. The Court concludes that Exhibit Seven is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 8.    Exhibit Eight: CitiBank NA Credit Card Statement

There is no disagreement over whether the Citibank credit card statement is an authentic business record. The redaction of the undercover agent's identity and account number may matter for relevancy if the Government cannot link the purchase to Mr. Gordon.[6]    However, the Government seeks only preliminary determinations in its motion in limine, so the Court concludes that Exhibit Eight is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 9.    Exhibit Nine: CBS Notices of Copyright and Infringement

The letter that Mr. Gordon discusses in his objection does not have any obvious link to the CBS email notices contained in Exhibit Nine. The records are from CBS, and the letter concerns Charter. *See Gov't's Reply* at 15. Mr. Gordon's only other objection to Exhibit Nine concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One. Thus, the Court concludes that Exhibit Nine is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

---

[6]    Mr. Gordon's objection to this exhibit is not well defined. Typically, once a proper foundation is established for the person listed as the custodian or other qualified witness, FED. R. EVID. 803(6)(D), the identity of the person is only a matter of curiosity. Here, where the other qualified witness is an undercover agent, there would potentially be a greater reason to explore his or her bias and basis of knowledge. Even so, in this case, there is no indication on the face of the exhibit that it shows a "lack of trustworthiness," FED. R. EVID. 803(6)(E), and the Court is left uncertain why Mr. Gordon requires the name of the undercover agent to assess the admissibility of the exhibit. If Mr. Gordon wishes to further explain his position, he is free to do so.

### 10. Exhibit Ten: Eastern Maine Healthcare Systems Job Application

Both parties agree that Exhibit Ten is an authentic business record, and there are no immediate objections. The Court concludes that Exhibit Ten is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 11. Exhibit Eleven: Google LLC, Subscriber Information, Customer Confirmations, Messages From and to Customers, Google Alerts

It is unclear to the Court how the volume of Exhibit Eleven changes the result of the qualified witness analysis explained above, especially given that the certificate of authenticity serves as a substitute for a qualified witness. However, while the records in Exhibit Eleven are properly authenticated, they raise the same trustworthiness and unfair prejudice concerns addressed in the Court's discussion of Exhibit Six because they contain complaints from customers, often including legal conclusions made without the requisite legal knowledge to be reliable. For the same reasons as Exhibit Six, under Rule 803(6) and Rule 403, the Court concludes that the documents in Exhibit Eleven are authentic but denies the admissibility of Exhibit Eleven in its current form. If the Government wishes to submit a narrower or redacted exhibit, the Court will take the submission under consideration.

### 12. Exhibit Twelve: Green Dot Bank Cardholder Information

Both parties agree that Exhibit Twelve is an authentic business record, and there are no immediate objections. The Court concludes that Exhibit Twelve is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 13. Exhibit Thirteen/Thirteen-A: Neustar, Inc. Subscriber Information/Consolidated Communications Subscriber Information

Exhibit Thirteen-A cures the lack of a connection between the certificate of authenticity and the underlying record that was present in Exhibit Thirteen. The Court concludes that Exhibit Thirteen-A is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 14. Exhibit Fourteen: PSI Systems

Mr. Gordon's only objection to Exhibit Fourteen concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 15. Exhibit Fifteen: Square (Weebly) Subscriber Information

It is unclear to the Court why the certification contained in Exhibit Fifteen does not comply with Rule 803(6) or why the three pages of subscriber information contained in Exhibit Fifteen would be created by the Government instead of Square (Weebly). George Sukara, an employee of Square (Weebly), certified the authenticity of the attached records as business records in accordance with Rule 902(11). *See Additional Attachs.* (ECF No. 60), Ex. 15. Mr. Gordon's only other objection to Exhibit Fifteen concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One. Thus, the Court concludes that Exhibit Fifteen is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 16. Exhibit Fifteen-A: Spreadsheet

The Court does not find any reason why the certificate of authenticity contained in Exhibit Fifteen does not apply to Exhibit Fifteen-A or why the spreadsheets might not be made by Square (Weebly).  Thus, under the assumption that the spreadsheet was made by Square (Weebly), the Court concludes that Exhibit Fifteen-A is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 17.  Exhibit Fifteen-B: Spreadsheet

For the same reasons as Exhibit Fifteen-A described above, the Court concludes that Exhibit Fifteen-B is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 18.  Exhibit Fifteen-C: Account Dossier

The Court does not find an Exhibit Fifteen-C submitted by the Government.  Accordingly, the Court reserves judgment on this exhibit pending explanation by the defense at the pretrial conference on September 23, 2019.

### 19.  Exhibit Sixteen: Square Account and Subscriber Information

Mr. Gordon's only objection to Exhibit Sixteen concerns the use of Special Agent Thresher as a qualified witness.  This objection fails for the reasons explained under Exhibit One.

### 20.  Exhibit Seventeen: Stripe, Inc. Subscriber Information

Mr. Gordon's only objection to Exhibit Seventeen concerns the use of Special Agent Thresher as a qualified witness.  This objection fails for the reasons explained under Exhibit One.

### 21. Exhibit Seventeen-A: Stripe, Inc., Spreadsheet

It is unclear to the Court how Exhibit Seventeen-A contains parts of the information set forth in Exhibit Seventeen. Exhibit Seventeen contains two PDF pages with one and three rows of data, respectively, related to Everex. *See id.*, Ex. 17. The spreadsheet in Exhibit Seventeen-A, on the other hand, is four pages long with one hundred and ninety-six rows of data, none of which relates to Everex. *See id.*, Ex. 17A. The certification of Exhibit Seventeen seems to include this spreadsheet because it lists the attached records as "one PDF with two pages and two Excel spreadsheets with four pages." *See id.*, Ex. 17. However, the Court reserves judgment on Exhibit Seventeen-A pending an explanation of how it contains parts of information from Exhibit Seventeen and whether it was made by Square, Inc. in the ordinary course of the regularly conducted business of the entity.

### 22. Exhibit Seventeen-B: Stripe, Inc., Spreadsheet

For the same reasons as Exhibit Seventeen-A described above, the Court reserves judgment on Exhibit Seventeen-B pending an explanation of how it contains parts of information from Exhibit Seventeen and whether it was made by Square, Inc. in the ordinary course of the regularly conducted business of the entity. *See Gov't's Mot.*, *Additional Attachs.* (ECF No. 60), Exs. 17, 17B.

### 23. Exhibit Eighteen: Text Now, Inc. Mobile Cell Phone Service Subscriber Information

Mr. Gordon's objection to Exhibit Eighteen is on relevance grounds, which will be determined at trial. Both parties agree that this exhibit is an authentic business record, and the only other immediate objection concerns the use of Special Agent

Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One. The Court concludes that Exhibit Eighteen is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 24. Exhibit Nineteen: United Parcel Service Store Application for Delivery, Mailbox Agreement and Receipts

Mr. Gordon's only objection to Exhibit Nineteen concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 25. Exhibit Twenty: Yahoo! Inc. Account Management Tool, Messages From and To Customers

While the records in Exhibit Twenty are properly authenticated, they raise the same trustworthiness and unfair prejudice concerns addressed in the Court's discussion of Exhibit Six because they contain complaints from customers, often including legal conclusions made without the requisite legal knowledge to be reliable. Rule 403 applies to all evidence, not just hearsay, and the Court does not agree with the Government that a curative instruction will cure the unfair prejudice introduced by these complaints. For the same reasons as Exhibit Six, under Rule 803(6) and Rule 403, the Court concludes that the documents in Exhibit Twenty are authentic but denies the admissibility of Exhibit Twenty in its current form. If the Government wishes to submit a narrower or redacted exhibit, the Court will take the submission under consideration.

Mr. Gordon's only other objection to Exhibit Twenty concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 26. Exhibit Twenty-A: Yahoo! Inc. E-Mail Orders

The Court has not found any customer complaints contained within the email order records in Exhibit Twenty-A. Thus, the trustworthiness and prejudice concerns present in Exhibit Twenty do not affect Exhibit Twenty-A's admissibility. The Court agrees with the Government that, assuming the Government can sufficiently link the email orders to Mr. Gordon, they are admissible as adoptive admissions and verbal, legally operative acts. The email orders are selected from the custodian's records, and thus are also business records, subject to testimony from Mr. Gordon's former employees. Mr. Gordon's objection based on the use of Special Agent Thresher as a qualified witness fails for the reasons explained under Exhibit One. The Court concludes that Exhibit Twenty-A is authentic and admissible, subject to determinations at trial of the exhibit's relevance and the connection to Mr. Gordon.

### 27. Exhibit Twenty-One: City of Brewer Property Assessment Record

Mr. Gordon's only objection to Exhibit Twenty-One concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 28. Exhibit Twenty-Two: CAFRA Seized Asset Claim Form

Both parties agree that Exhibit Twenty-Two is an authentic business record, and there are no immediate objections. The Court concludes that Exhibit Twenty-

Two is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

### 29. Exhibit Twenty-Three: Internet Crime Complaint Center Referral Forms

For the reasons addressed in the Court's discussion of Exhibit Six under Rule 403, the Court denies the admissibility of Exhibit Twenty-Three in its current form.[7] If the Government wishes to submit a narrower or redacted exhibit, the Court will take the submission under consideration.

### 30. Exhibit Twenty-Four: Maine Attorney General Civil Investigative Demand, Complaints, Consumer Data Entry, Letters

For the reasons addressed in the Court's discussion of Exhibit Six under Rule 403, the Court denies the admissibility of Exhibit Twenty-Four in its current form. If the Government wishes to submit a narrower or redacted exhibit, the Court will take the submission under consideration.

### 31. Exhibit Twenty-Five: Maine Maritime Academy Resume and Employee Enrollment Form

Mr. Gordon's only objection to Exhibit Twenty-Five concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 32. Exhibit Twenty-Six: U.S. Postal Service Post Office Box Application

---

[7] While the Court admitted IC3 complaints in *United States v. Kilmartin*, No. 14-cr-00129-JAW, 2017 WL 3668114 (D. Me. Aug. 24, 2017), this case differs in several regards. Here, the IC3 complaints are not being used, as in *Kilmartin*, to show motive for the defendant's actions but to show notice to Mr. Gordon of wrongdoing. The risk of misleading the jury or prejudicing them based on laypersons' legal opinions and emotional responses substantially outweighs the probative value of this notice, especially where the Government has made no demonstration that it is unable to show notice in a less prejudicial manner.

Mr. Gordon's only objection to Exhibit Twenty-Six concerns the use of Special Agent Thresher as a qualified witness. This objection fails for the reasons explained under Exhibit One.

### 33.  Exhibit Twenty-Seven: U.S. Copyright Office Certificates of Copyright Registration

The Court concludes that the ninety-two Certificates of Copyright Registration contained in Exhibit Twenty-Seven are self-authenticating and are admissible, subject to determinations at trial of the exhibit's relevance. The Court reserves judgment on any documents within Exhibit Twenty-Seven that are not Certificates of Copyright Registration pending explanation at the pretrial conference on September 23, 2019, because Mr. Gordon has not identified which documents are e-mails and the Government has not responded to this objection.

### 34.  Exhibit Twenty-Eight: U.S. Copyright Office Certificate of Non-Existence

Both parties agree that Exhibit Twenty-Eight is an authentic business record, and there are no immediate objections. The Court concludes that Exhibit Twenty-Eight is authentic and admissible, subject to determinations at trial of the exhibit's relevance.

## V.  CONCLUSION

The Court GRANTS the Government's Motion in Limine for Determination that Exhibits Qualify as Admissible Records Under Rule 803 (ECF No. 59) for Exhibits One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, Twelve, Thirteen-A, Fourteen, Fifteen, Fifteen-A, Fifteen-B, Sixteen, Seventeen, Eighteen, Nineteen,

Twenty-A, Twenty-One, Twenty-Two, Twenty-Five, Twenty-Six, Twenty-Seven (in part) and Twenty-Eight.  The Court DENIES the Government's Motion in Limine for Exhibits Six, Eleven, Twenty, Twenty-Three, and Twenty-Four.  The Court RESERVES JUDGMENT on the Government's Motion in Limine for Exhibits Fifteen-C, Seventeen-A, Seventeen-B, and Twenty-Seven (in part).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2019