UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:19-cr-00007-JAW |
| v. | ) | |
| | ) | |
| DOUGLAS GORDON | ) | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE TO USE A SUMMARY CHART AS ADMISSIBLE EVIDENCE DURING TRIAL**

In anticipation of trial on charges of criminal copyright infringement and mail fraud, the United States (Government) moves in limine for a pre-trial ruling on the admissibility of a summary chart during trial under Federal Rules of Evidence 104 and 1006. *Gov't's Mot.* in Limine *to Use a Summ. Chart as Admissible Evid. During Trial* (ECF No. 68) (*Gov't's Mot.*).

**I. BACKGROUND**

On July 30, 2019, the Government filed a motion in limine to use a summary chart as admissible evidence during trial. *Gov't's Mot.* On August 16, 2019, Mr. Gordon filed his response to the Government's motion in limine. *Def.'s Opp'n to the Gov't's Mot.* in Limine *to Use a Summ. Chart as Admissible Evid. During Trial* (ECF No. 74) (*Def.'s Opp'n*). On August 22, 2019, the Government filed its reply, along with an amended summary chart. *Reply of the United States to the Def.'s Opp'n to the Gov't's Mot.* in Limine *to Use a Summ. Chart as Admissible Evid. During Trial* (ECF No. 75) (*Gov't's Reply*).

**II. THE PARTIES' POSITIONS**

1

### A. The Government's Motion in Limine

The Government prepared a chart summarizing information obtained from over forty-six thousand emails and lines of data, as well as hard copies of the three websites in question in this case. *Gov't's Mot.* at 2, 11. The chart shows the number of DVD copies of movies that were ordered from each website, the number of different movies offered on each website, and the total amounts of proceeds received through operation of each website. *Id.* The Government asks the Court to issue a pre-trial ruling permitting the use of the summary chart "because organizing, presenting and analyzing the underlying records pertaining to approximately forty-six thousand online sales of DVD movies would otherwise be extremely time-consuming and extraordinarily difficult." *Id.* at 1. The Government specifically requests the admittance of the chart into evidence because "[a]bsent such summary charts, the jury will be awash in disparate documents and spreadsheets, with little assistance in synthesizing the records or understanding the scope of the fraud or how particular records fit with other records and/or witness testimony." *Id.* at 10.

The Government argues that the summary chart meets "all of the conditions precedent to admission under Rule 1006." *Id.* at 7. First, the Government asserts that "the underlying documents—the three websites, the emails obtained from Yahoo! Inc. and the spreadsheets obtained from Kunaki and Weebly—are admissible" because "[t]he summary is based on ordinary business records that satisfy the hearsay exception in Federal Rule of Evidence 803(6)" and the email orders "are also adoptive admissions under Rule 801(d)." *Id.* at 7-8. "Investigators and several of the

Defendant's former employees will provide a foundation for admission of hard copies of the websites into evidence." *Id.* at 7.

Second, the Government asserts that "these [underlying] records are clearly too voluminous for convenient in-court review by the jury." *Id.* at 9. "Any attempt to introduce approximately 23,080 emails and approximately 23,253 lines of data from spreadsheets would be extraordinarily time consuming and impractical," and "[t]he summary chart will substantially reduce the jurors' burden of analyzing the underlying online order documents at trial." *Id.* (citing *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).

Third, the Government states that "the chart should accurately reflect the underlying documents." *Id.* The Government asserts that "the chart was prepared as a result of meticulous analysis and accurately summarizes the underlying online order documents." *Id.* The Government also notes that any inaccuracies discovered in the chart can be cured with a limiting jury instruction, as was done in *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 128-30 (S.D.N.Y. 2000). *Gov't's Mot.* at 9-10 n.8. The Government adds that the chart "is merely a compilation of DVD movies ordered by customers," and thus "accurately reflects the information contained therein." *Id.* at 11.

Fourth, the Government explains that "[t]he United States months ago met its obligations to make the underlying documents available" by "provid[ing] the defense with copies of the underlying records by means of FedEx delivery on March 22, 2019," making the summarized data "available to defense counsel six months before the

3

scheduled trial date," and providing the defense with the actual summary chart on July 26, 2019. *Id.* at 10.

Fifth, the Government contends that the summary chart will be properly introduced because "the summary charts will be presented by Special Agent Loren Thresher—the lead case agent—who produced the charts and will be on hand for defense counsel to question during the trial." *Id.* (citing *United States v. Gaitan-Acevedo*, 148 F.3d 577, 587 (6th Cir.), *cert. denied*, 525 U.S. 998 (1998); *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir.), *cert. denied*, 522 U.S. 983 (1997)).

### B. Douglas Gordon's Opposition

Mr. Gordon focuses his opposition on the Government's third and fifth arguments. *Def.'s Opp'n* at 2-3.

He first argues that "the summary chart is neither accurate nor reliable, and contains on its face, nearly one-hundred erroneous entries and misleading entries . . . ." *Id.* at 1. Mr. Gordon points out a paragraph in the Government's motion in which the Government describes the purpose of the chart as "show[ing] the number of DVD copies of movies that were *ordered* from the three websites" and lists the underlying sources for the chart as only the online orders and email orders. *Id.* at 1-2 (emphasis added by Defendant) (quoting *Gov't's Mot.* at 2). He argues that the Government's summary chart is inaccurate, unreliable, and prejudicial because it "was supposedly created from online orders, but contains 88 movies that were not ordered; contains three titles that were not listed on any of the three websites [and were not ordered];

4

and contains 21 titles that were not listed on any of the three websites but which had many online orders." *Id.* at 6.

Mr. Gordon also argues that there is insufficient foundation to admit the chart at this time "because Special Agent Thresher has not yet provided foundational testimony to support its admission and to explain his research, process, findings, and how the chart itself was created." *Id.* He asks the Court to deny the Government's motion or refrain from ruling on it until it has heard Special Agent Thresher's foundational testimony because "[t]he Government's Motion seeks to sidestep this [foundation] requirement by obtaining a preliminary ruling on the chart's admissibility." *Id.* at 7.

Mr. Gordon does not address the first, second, or fourth conditions precedent to admission under Rule 1006.

### C. The Government's Reply

The Government reiterates its position that the summary chart should be admitted under Rule 1006:

> In the absence of a summary chart, jurors would be required to examine hundreds of pages of website advertisements as well as an incomprehensible number of email confirmations and pages of spreadsheets without any means of seeing the total numbers of movies offered for sale, identifying which movies were offered for sale on more than one website or determining the number of orders received for each movie.

*Gov't's Reply* at 2.

In response to Mr. Gordon's claim that the summary chart is neither accurate nor reliable, the Government made "several minor changes to the chart." *Id.* at 3.

5

First, the date in Column F of the chart was edited from January 30, 2017, to January 27, 2017, to reflect the actual date the Lostmoviesfound (LMF) website was copied. *Id.* Second, one movie—*Eyes of Fire*—was moved to the final page of the summary chart because it was not advertised on one of the websites but was ordered several times. *Id.* Third, the Government deleted four movie titles from the list, including the three identified by Mr. Gordon, because they were not listed on the three websites and were not ordered. *Id.*

The Government argues that all other movies are an accurate summary of the underlying documents and should remain on the list. *Id.* Specifically addressing the movies listed on at least one website but never ordered, the Government asserts that "[t]he Defendant's advertisement of such large numbers of movies as available for purchase on his websites provided customers with a false sense of the legitimacy of the 'On-Line' operation" because they "understandably reasoned the likelihood that a vendor would make false representations and material omissions regarding such large numbers of DVD movies was less likely." *Id.* at 3-4. The Government adds that giving jurors the ability to "comprehend the scope of the Defendant's alleged copyright infringement and mail fraud" will make them "more likely to return correct verdicts" but "does not amount to unfair prejudice." *Id.* at 4 n.5.

Finally, the Government clarifies that it is asking the Court "to decide the preliminary question about whether the summary chart will be admissible pursuant to Federal Rule of Evidence 104(a) and (b)," not to sidestep the preliminary ruling. *Gov't's Reply* at 5. "[T]he Government understands the Court's ruling will be subject

6

to fulfillment of a condition of fact." *Id.* Here, the condition is "that a foundation for the chart will later be introduced at trial." *Id.*

## III. THE LEGAL STANDARD

The Government "request[s] a preliminary determination, as authorized by Federal Rule of Evidence 104, that the attached summary chart will be admissible evidence during trial" and that "[t]he attached summary chart prepared by the Government's case agent satisfies the requirements of Rule 1006." *Gov't's Mot.* at 1 (citing FED. R. EVID. 104, 1006).

### A. Federal Rule of Evidence 104

Rule 104(a) states, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a). Under Rule 104(a), the Court acts as a gatekeeper, *United States v. Poulin*, 592 F. Supp. 2d 132, 136 (D. Me. 2008), as it determines "whether foundational facts have been established (and, thus, whether particular pieces of evidence are eligible for admission)." *Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003). Foundational facts are those facts which dictate whether evidence is admissible, which includes "the genuineness of a document or statement, the maker's personal knowledge, and the like." *Id.* The proponent must establish these foundational facts by a preponderance. *United States v. Campbell*, 268 F.3d 1, 4 (1st Cir. 2001) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

Rule 104(b) states, "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." FED. R. EVID. 104(b). Unlike in Rule 104(a), "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Rather, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.*

"Authentication is . . . treated as a matter of 'conditional relevancy' governed by Rule 104(b). The question of authenticity is ultimately one for the jury, and the court must determine only whether the jury could reasonably find the proffered evidence authentic." *United States v. Rosado-Cancel*, Crim. No. 13-0731, 2015 WL 1968508 (DRD), at *6 (D.P.R. May 1, 2015).

### B. Federal Rule of Evidence 1006

Rule 1006, entitled "Summaries to Prove Content," states:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006. Rule 1006 "creates an exception to Rule 1002, which requires that originals be used to prove the contents of writings, recordings and photographs."

*United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006). Summary charts used in accordance with Rule 1006 may be fully admitted into evidence. *United States v. McElroy*, 587 F.3d 73, 81-82 (1st Cir. 2009); *Milkiewicz*, 470 F.3d at 397-98.

The rule addresses situations in which a summary is the "only practicable means of making [the] content available to judge and jury," *R & R Assocs. V. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984) (quoting FED. R. EVID. 1006 advisory committee's note on proposed rules), as well as situations in which an in-court examination of the underlying records would be inconvenient. *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 29-30 (1st Cir. 2011) (stating that "summary charts and graphs . . . consist[ing] of a condensed presentation" of an "extensive record" were "an appropriate presentation of 'voluminous writings' that 'cannot conveniently be examined in court'" (quoting FED. R. EVID. 1006)); *United States v. Possick*, 849 F.2d 332, 330 (8th Cir. 1988) ("Rule 1006 does not require that it be literally impossible to examine all the underlying records, but only that in-court examination would be an inconvenience").

To satisfy Rule 1006, the proponent of the summary must show that (1) the underlying source materials are "otherwise admissible," (2) the source materials are voluminous, (3) the source materials are "what the proponent claims them to be" and "the summary accurately summarizes" them, and (4) the source materials were made available to the other parties for inspection and copying at a reasonable time and place. *See Milkiewicz*, 470 F.3d at 396 and n.12. The proponent must also (5) lay a proper foundation for the admission of the summary chart. *Colón-Fontánez*, 660 F.3d

9

at 31. "In the context of a summary exhibit, the proponent of the exhibit 'should present the testimony of the witness who supervised its preparation.'" *Id.* (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).

An accurate summary "fairly represent[s] the underlying documents" and is "nonprejudicial." *Milkiewicz*, 470 F.3d at 398 (quoting *Bray*, 139 F.3d at 1111). It must "summarize[] the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner" with nothing "lost in the translation." *Bray*, 139 F.3d at 1110. Summaries admitted "in lieu of the underlying documents" must not be "embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise." *Id.* The goal is to prevent "a summary containing elements of argumentation" from functioning as "a mini-summation by the chart's proponent every time the jurors look at it during their deliberations." *Id.*

Summary charts admitted into evidence under Rule 1006 differ from pedagogical devices used during trial under Rule 611(a)[1] to aid counsel's argument to the jury. *Gov't Mot.* at 3 n.2; *see United States v. Milkiewicz*, 470 F.3d 390, 395-400 (1st Cir. 2006). The key difference between the types of summary charts "appears to be the purpose for which the summaries are offered." *Milkiewicz*, 740 F.3d at 398. Rule 1006 charts "are explicitly intended to reflect the contents of the documents they summarize." *Id.* Rule 611(a) summaries, on the other hand, "tend to be 'more akin

---

[1] Rule 611(a) states, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." FED. R. EVID. 611(a).

to argument than evidence.'" *Milkiewicz*, 740 F.3d at 398 (citing 6 MARK S. BRODIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE § 1006.08[4] (2d ed. 2019)) (noting also that pedagogical aids allowed under Rule 611(a) to illustrate or clarify a party's position may reflect "the inferences and conclusions drawn from the underlying evidence by the summary's proponent" "through captions or other organizational devices or descriptions"). The accuracy requirements for Rule 1006 described in *Bray* address this distinction between reflection and argumentation. *See* 139 F.3d at 1110.

The category a summary chart fits into matters for how the proponent can use the chart during trial. *Milkiewicz*, 740 F.3d at 395 ("[T]he basis for admission can affect how a summary is used, including whether a jury may rely on it as primary evidence and whether it is allowed in the jury room during deliberations"). Generally, a Rule 1006 summary chart is secondary evidence used as a substitute for the originals[2] and thus can be used during jury deliberation, while a Rule 611(a) summary chart "is not itself . . . evidence" and cannot replace the underlying documents during jury deliberation because of its argumentative nature. *Id.* at 397 and n.14.[3]

### C. Federal Rule of Evidence 403

---

[2] Materials "underlying the Rule 1006 summaries need not be admitted into evidence." *Air Safety, Inc. v. Roman Catholic Archbishop of Bos.*, 94 F.3d 1, 7 n.14 (1st Cir. 1996) (citing *United States v. Bakker*, 925 F.2d 728, 736-37 (4th Cir. 1991)). However, underlying documents being admitted into evidence does not preclude the use of Rule 1006 because "[t]he fact that the underlying documents are already in evidence does not mean that they can be conveniently examined in court." *Milkiewicz*, 740 F.3d at 397 (alternation in original) (quoting *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985)).

[3] There are some exceptions to the general distinction between admissible and inadmissible charts. *See Milkiewicz*, 740 F.3d at 398. However, they do not apply to the facts of this case.

11

Rule 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## IV. DISCUSSION

The Court concludes that it is likely that the Government's summary chart will be admissible under Rule 1006. The chart attempts to improve a situation that would be inconvenient and impractical for the jury: "examining hundreds of pages of website advertisements as well as an incomprehensible number of email confirmations and pages of spreadsheets" without any means of seeing total amounts of sales, profits, or videos advertised or ordered. *Gov't's Reply* at 2. Moreover, the chart in its current format satisfies the conditions of Rule 1006, as detailed below.

However, since the Court has not seen the version of the chart the Government plans to use during trial, the Court cannot know whether the chart will be too prejudicial, will mislead the jury, or will contain "elements of argumentation" that make the chart otherwise inadmissible. *See United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Thus, pursuant to Rules 403 and 1006, the Court cannot make a final ruling on the admissibility of the chart until trial.

Mr. Gordon objects to the chart's adherence to two of the conditions precedent to admission under Rule 1006. The Court concludes that the summary chart in its current format meets both conditions.

12

### A. The Summary Chart Accurately Summarizes the Source Materials Pending Review of the Final Version Presented During Trial

The parties' disagreement as to whether the summary chart accurately summarizes the source materials stems from whether the Government intends to include the hard copies of the three websites as underlying source materials. The intent is unclear from the Government's initial motion. *See, e.g.*, *Gov't's Mot.* at 1 (discussing the difficulty of "organizing, presenting and analyzing the underlying records pertaining to approximately forty-six thousand online sales of DVD movies" without mentioning the website pages); *Gov't's Mot.* at 9 ("[T]he chart was prepared as a result of meticulous analysis and accurately summarizes the underlying online order documents"); *Gov't's Mot.* at 11 (stating that the chart is "merely a compilation of DVD movies ordered by customers"); *but see Gov't's Mot.* at 7 (listing "the three websites" in the underlying documents and discussing the foundation of admission for the hard copies of the websites). However, the Government's reply clarifies that it means to include the hard copies of the three websites in the underlying documents. *See Gov't's Reply* at 3-5.

Considering the Government's reply, the content included in the summary chart is accurate and reliable. First, the eighty-eight movies contained on the chart but not ordered are seemingly accurate portrayals of the information from the website pages. Mr. Gordon does not argue that these movies were not listed on the website. Second, the Government has deleted from the chart the three titles he states were neither ordered nor listed on any of the three websites. Lastly, the twenty-one titles

not listed on the websites that were the subject of online orders are accurate even without the inclusion of the website pages.

The open question is whether the Government's use of the summary chart during trial will "contain[] elements of argumentation." *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). If so—such as through highlighting, size formatting, or added captions—the chart might act as a "mini-summation by the [Government] every time the jurors look at it during their deliberations." *Id.* The Court is encouraged by the Government's assurance that the chart is "merely a compilation of DVD movies ordered by customers" (though it also contains the movies listed on the websites) and the Government's acknowledgement of the distinction between Rule 1006 summary charts and Rule 611(a) summary charts. *Gov't's Mot.* at 3 n.2, 11. However, until the Court has seen the version of the chart used during trial, it cannot reach a final determination.

> **B. The Promised Testimony of Special Agent Thresher Satisfies the Requirement that the Summary Chart Be Properly Introduced on the Condition that the Foundation for the Chart Be Introduced at Trial**

Rule 104(b) applies to pre-trial determinations of authentication evidence. *See* FED. R. EVID. 104(b); *United States v. Rosado-Cancel*, Crim. No. 13-0731, 2015 WL 1968508, at *6 (D.P.R. May 1, 2015) (applying Rule 104(b) to authentication evidence and requiring only that "the jury could reasonably find the proffered evidence authentic"). Though Special Agent Thresher has not yet provided foundational testimony, the Government attests that he will do so. Proper foundation for a summary consists of "testimony of the witness who supervised its preparation."

14

*United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Special Agent Thresher produced the charts himself, *Gov't's Mot.* at 10, so a reasonable jury could find that his testimony provides a proper foundation for the summary chart.

In filing this motion in limine, the Government is not "sidestep[ping]" laying a proper foundation because Special Agent Thresher will still need to provide foundational testimony during trial, and the admittance of the chart will depend on the jury's analysis of that testimony.

## V. CONCLUSION

The Court DEFERS FINAL RULING on the Government's Motion in Limine to Use a Summary Chart as Admissible Evidence During Trial (ECF No. 68) until trial.

SO ORDERED.

>/s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2019