**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **v.** | ) | **Crim. No. 1:19-cr-00007-JAW** |
| **DOUGLAS GORDON,** **Defendant.** | ) | |

# TRIAL BRIEF OF THE UNITED STATES

**NOW COMES** the United States of America, by and through Halsey B. Frank, United States Attorney for the District of Maine, and James M. Moore, Assistant U.S. Attorney, and hereby files its Trial Brief setting forth legal bases for the charged offenses with citation to the appropriate statutory authorities pursuant to Rule 157.2 of the Local Rules of the United States District Court for the District of Maine and the Criminal Case Schedule issued by the Court. In the absence of knowledge as to the duration of any cross examination, a reasonable estimate for presentation of the Government's case-in-chief is 6 days, not including the day for jury selection.

## I. STATUS OF THE CASE

A. Jury selection is scheduled at Bangor, Maine on October 8, 2019 before Magistrate Judge John C. Nivison of the U.S. District Court.[1]

B. This matter is specially set for trial at Bangor, Maine, beginning on October 21, 2019 before District Judge John A. Woodcock, Jr. of the U.S. District Court.

C. The Government is expected to call approximately twenty-two witnesses in its case-in-chief and may call other witnesses in its case in chief or rebuttal depending on pretrial rulings of the Court and/or the defense asserted by Mr.

[1] The United States will file its proposed jury voir dire, witness list and exhibit list separately.

Gordon.

D. The Government expects to complete its case-in-chief within about six days.

E. The Government's opening statement is expected to require approximately 20 minutes.

## II. STATEMENT OF THE CASE

### A. Procedural History

An indictment was returned in January, charging defendant Douglas Gordon with two counts of copyright infringement. On January 31, 2019 and February 8, 3019, orders setting forth conditions of release were issued following the Defendant's initial appearance before Magistrate Judge John C. Nivison. A bail review hearing was conducted by the Court on March 8, 2019. A superseding indictment charging a third count – mail fraud – was returned on April 18, 2019. A joint motion to continue the trial to the date certain of October 21, 2019 was granted on May 2, 2019. On September 3, 2019, jury selection was set for October 8, 2019.

### B. The Legal Basis of the Charges

On January 17, 2019, a grand jury in this District returned a two-count Indictment against the defendant Douglas Gordon. The grand jury returned a three-count Superseding Indictment on April 18, 2019. Counts One and Two of the Superseding Indictment charge the Defendant with criminal copyright infringement or aiding and abetting in violation of 17 U.S.C. § 506(a)(1)(B) and 18 U.S.C. § 2319(a), 2319(c)(1) and 2. Count Three charges the Defendant with mail fraud or aiding and abetting in violation of 18 U.S.C. § 1341 and 2

### C. Trial Status

The Defendant's trial is set for October 21, 2019. A reasonable estimate for presentation

of the Government's case-in-chief is 6 full court days, not including time for cross examination.[2]

## III. STATEMENT OF THE LAW

Set forth below are the elements of the charged offenses with statutory citations:

### A. Counts One and Two: Criminal Copyright Infringement, 17 U.S.C. § 506(a)(1)(B); 18 U.S.C. §§ 2319(a), 2319(c)(1)

The elements of the charged offense of criminal copyright infringement in Counts One and Two are as follows:

First, that the works alleged to have been reproduced or distributed were protected by copyright;

Second, that the Defendant infringed a copyright of a work by reproducing or distributing ten or more copies of one or more copyrighted works;

Third, that the Defendant willfully infringed the copyrights; and

Fourth, that the Defendant, during a 180-day period, reproduced or distributed ten or more copies of one or more copyrighted works which have a total retail value of more than $2,500.

### B. Count Three: Mail Fraud, 18 U.S.C. § 1341

The elements of the charged offense of mail fraud in Count Three are as follows:

First, that there was a scheme, substantially as charged in the superseding indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses;

Second, that the scheme to defraud involved the misrepresentation or omission of a material fact or matter or a scheme to obtain money or property by means of false or fraudulent

[2] The Government anticipates at least three days prior to the trial date filing a supplemental trial brief which will include a summary of the investigation of the Defendant as well as the anticipated evidence. *See* Local Rule 157.2.

pretenses involving a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

Third, that the Defendant knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, the Defendant caused the United States mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail would be used, on or about the dates alleged.

**C. Counts One, Two and Three: Aiding and Abetting, 18 U.S.C. § 2**

The Defendant is also charged with aiding and abetting criminal copyright infringement and mail fraud. To "aid and abet" means intentionally to help someone else commit the charged crime. To establish aiding and abetting, the Government must prove beyond a reasonable doubt:

First, that the crimes of copyright infringement and mail fraud were actually committed by someone;

Second, that the Defendant took an affirmative act to help or cause one or both crimes; and

Third, that the Defendant intended to help or cause the commission of one or both crimes.

## IV. STIPULATIONS

The parties have reduced to writing and agreed to the three following stipulated facts:

Doug Gordon was the Time Warner Cable subscriber who was assigned the telephone number of (207) 922-2391. Mr. Gordon activated the telephone number on August 29, 29, 2014 and provided a subscriber address of 5 Cross Street, Brewer, ME 04412.

Christine A. Gordon opened Bangor Savings Bank account 402008XXXX in order to provide her son, the Defendant, with financial assistance.

> The Defendant used debit card 9890 issued from Bangor Savings Bank account 402008XXXX to make purchases from Kunaki, LLC from 12/21/2017 to 12/20/2018.

The United States has suggested that the defense enter into additional stipulations regarding evidentiary and factual matters that do not appear to be in dispute in an effort to reduce the time required for witness testimony. The United States requests that defense counsel notify the Government prior to trial if the Defendant will agree to any stipulations proposed by Government counsel, or if the defense has other suggestions with respect to stipulated facts. Any additional agreed-upon stipulations will be reduced to writing, signed by all parties, filed with the Court, and published to the jury at the appropriate time during the course of the trial.

## V. OBJECTIONS TO EXHIBITS OR TESTIMONY

The United States has filed four motions *in limine* and the Defendant has objected to each of the motions. The defense has also filed a motion *in limine* seeking an order to prohibit the use of five terms -- "piracy, pirate, thief, theft and stealing" -- to describe Mr. Gordon or his actions. The Government is not aware of any specific defense objections to exhibits or testimony other than those asserted in the above-referenced motions. The Government has not to date received any reciprocal discovery material from the Defendant and has been apprised that the defense will not seek to introduce any exhibit during its case in chief.[3] In the event that the Defendant or the Government does raise any objections to exhibits or anticipated testimony prior to the trial, the Government will attempt in advance to resolve them.

[3] The defense originally claimed it is relieved of its burden of producing reciprocal discovery material because it would be relying on documents among well over one hundred thousand pages of records already produced by the Government. In response, the undersigned Assistant U.S. Attorney reminded defense counsel that the discovery provisions of Rule 16 are mandatory and that Rule 16(b) is not ambiguous about the Defendant's disclosure obligations: the defense must produce discovery material that it "intends to use . . . in the defendant's case-in-chief at trial" if it has requested such material from the Government and the Government has complied. Since Mr. Gordon will not seek admission of any exhibit during its case-in-chief, he is not obliged to produce discovery.

## VI. LEGAL ISSUES AT TRIAL

### A. Nullification

The Defendant has sent more than one dozen email messages directly to the undersigned Assistant U.S. Attorney or the Special Agent of Homeland Security Investigations who is leading the investigation of this case. Circumventing or ignoring the advice of his own court-appointed attorney, the most recent of these direct email messages was sent by the Defendant on September 4, 2019 to the undersigned Assistant U.S. Attorney in which the Defendant made a comment, request or suggestion which is, in fact, offensively course and obscene. An additional dozen email messages were sent by the Defendant directly to Special Agent Loren Thresher between June 22, 2017 and November 19, 2018. In addition to including offensively course, obscene or profane language among some of the dozen email messages to Agent Thresher, it is clear from the content of the Defendant's repeated contacts that the email messages were sent with an intent to harass the Federal investigator. The content of the Defendant's September 4, 2019 email message indicates he will not be deterred by the existing terms of pretrial supervision. In light of the Defendant's taking the extraordinarily unusual steps of harassing the case agent and the prosecutor, the Government has concern that the Defendant will impermissibly attempt to encourage jurors to disregard the law as the Court gives it to them.

The Defendant has described himself as a "Copyright Reform Activitist". *See* Government Exhibit Number ("Govt. Exh. No.") 1. He has portrayed himself as one who is "fighting" for internet freedom. The Court should not permit testimony regarding the Defendant's beliefs about a perceived need to reform copyright law as such beliefs are irrelevant and a possible jury nullification attempt. Evidence of the Defendant's particular point of view

about copyright reform should not be admissible as it would tend to urge the jury to ignore existing laws and raise issues under Federal Rule of Evidence 403. *United States v. Ahrendt*, 560 F.3d 69, 76 (1st Cir. 2009). Further, a court may "block defense … attempts to serenade a jury with the siren song of nullification ... and ... may instruct the jury on the dimensions of their duty to the exclusion of jury nullification." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993), *cert. denied*, 512 U.S. 1223 (1994); *United States v. Luisi*, 568 F. Supp.2d 106, 120 (D. Mass. 2008). Several Federal circuit courts have upheld exclusion of argument or evidence offered to illicit jury nullification. *See, e.g. United States v. Moss*, 297 Fed.Appx. 839, 841 (11th Cir. 2008); *United States v. Rosenthal*, 454 F.3d 943, 946 (9th Cir. 2006); *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998).[4] To the extent that Mr. Gordon attempts to subvert the jury's understanding of its proper role or his defense provides any reason for jurors to disobey the Court's instructions, the Government requests that the Court give a "firm instruction or admonition," in an attempt to "forestall or prevent" such nullification. *See Merced v, McGrath*, 426 F.3d 1076, 1079-80 (9th Cir. 2005) (*quoting United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997)).

**B. Defendant's Copyright Infringement and Fraud prior to 2014**

Rule 404(b) provides that evidence of prior bad acts is not admissible to prove conduct in conformity therewith, but is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b). It is well established that Rule 404(b) is an inclusive rule which allows admission of evidence of other acts

[4] Several District Courts have likewise ruled that a defendant may not offer evidence and testimony or engender sympathy for the purpose of inviting jury nullification. *See, e.g. United States v. Jones*, No. 3:13-cr-89, 2013 WL 5777684 at *2 (E.D. Tenn. Oct. 25, 2013) (barring introduction of video presentation to prevent jury nullification); *United States v. Duval*, 865 F. Supp. 2d 803, 808-09 (E.D. Mich. 2012) ("The defendants are not entitled to offer evidence and testimony for the sole purpose of inviting jury nullification."); *United States v. Rabinowitz*, No. 2:11-cr-230, 2012 WL 3150959 at *2 (S.D. Ohio Aug. 2, 2012) ("Of course Defendant cannot introduce his purported health issues in any attempt to obtain jury nullification.").

relevant to issues at trial. As the First Circuit stated in *United States v. Zeul*i, 725 F.2d 813 (1st Cir. 1984):

> The most striking aspect of ... [Evidence Rule 404(b) ] is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403. *United States v. Fosher*, 568 F.2d 207, 212 (1st Cir. 1978). Moreover, the test of admissibility is committed primarily to the trial court. *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975).

*Id*. at 816 (emphasis added). Whether to admit evidence under Rule 404(b) is within the District Court's sound discretion. *United States v. Ramey*, 791 F.2d 317, 323 (4th Cir. 1986).

Evidence of the Defendant's infringement of copyrights and fraudulent sale of counterfeit movie DVDs prior to April of 2014 will be admissible to show his knowledge of the scheme and to prove the existence of a common plan. *See United States v. DeCicco*, 370 F.3d 206, 210-11 (1st Cir. 2004) (explaining "evidence may be admissible . . . even if it may be construed as propensity evidence, if it is used to show any of the other elements set out in" Rule 404(b), including a "common plan or scheme"); *United States v. Billups*, 692 F.2d 320, 328 (4th Cir. 1982) (evidence of other bribes admissible to show common plan or scheme in bribery prosecution), *cert. denied*, 464 U.S. 820 (1983); *United States v. Powell*, 407 F.2d 582, 585 (4th Cir.) (counterfeiting prosecution; evidence of prior instances where defendant passed counterfeit bills admissible to show common plan or scheme), *cert. denied*, 395 U.S. 966, (1969). Such evidence of infringement and fraud will also be admissible to show the Defendant's motive and intent. *See, e.g. United States v. Van Metre*, 150 F.3d 339, 350-51 (4th Cir. 1998) (holding evidence of prior kidnapping and sexual assault committed by defendant was admissible to establish his motive and intent to sexually assault deceased victim in kidnapping-resulting-in-death case); *United States v. Queen*, 132 F.3d 991, 993-94 (4th Cir. 1997) (upholding admission of evidence in witness tampering case that defendant intimidated two witnesses in unrelated,

earlier prosecution); *United States v. Clark*, 988 F.2d 1459, 1465 (6th Cir. 1993) (upholding admission of evidence of threats and plans to harm other witnesses to establish motive and intent to murder where defendant was charged with murder of person he wanted to silence). The Defendant's reproduction of DVD movies prior to 2014 shows he intended to infringe copyrights as charged in the indictment.

There is no valid reason that the jury should be deprived of learning about defendant Gordon's motive and intent as well as the common plan which existed during the three years prior to 2014. The time between the commission of the prior acts and the charged offenses is well within what has been approved by the decisions of circuit courts. *See, e.g. United States v. Rawle*, 845 F.2d 1244, 1246-48 (4th Cir. 1988) (evidence of defendant's involvement in interstate transportation of marihuana eight years prior to date at issue admissible as evidence of knowledge and participation in common scheme); *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.) (no abuse in admitting evidence of prior crimes four years before charged offense), *cert. denied*, 464 U.S. 845 (1983); *United States v. Beahm*, 664 F.2d 414, 416-17 (4th Cir. 1981) (evidence of similar criminal activity within three years admissible). Indeed, while the Defendant has claimed the Government is improperly seeking to admit evidence barred by the statute of limitations, "evidence of events that occurred prior to the relevant statute of limitations period … is admissible as background and to show knowledge or intent." *United States v. Dish Network*, L.L.C., 75 F. Supp.3d 942, 968 (C.D. Ill. 2014), *vacated in part*, 80 F. Supp.3d 917 (C.D. Ill. 2015); *see also United States v. Khanu*, 664 F. Supp.2d 80, 84 (D.D.C. 2009) ("evidence that Defendant committed the same crimes as charged in the indictment prior to [the statute of limitations] … must be seen as evidence of other bad acts."). The Defendant had years prior to return of the indictment been placed on notice that he needed to secure

permission of copyright owners to reproduce movies and that his DVDs did not meet customer expectations. Repeated disregard shows a common plan. Accordingly, the Court should admit evidence of the Defendant's involvement in the unauthorized reproduction of copyright protected movies as well as his receipt of notice prior to the charged offenses.

**C. Certificates of Copyright Registration**

While the Defendant may claim that movies in question were not copyright protected, certificates of copyright registration establish the copyrights of 92 movies advertised on the Defendant's websites were secured through valid registration with the U.S. Copyright Office. The Court has concluded that the certificates proffered by the Government are self-authenticating and are admissible, subject to determinations at trial of the exhibit's relevance. *See United States v. Gordon*, 2019 WL 4303046 at *16 (D. Me. Sept. 11, 2019). In any judicial proceedings, the certificate of a registration made before or within five years after first publication of a movie will be *prima facie* evidence of the validity of the copyright and of the facts set forth in the certificate. 17 U.S.C. § 410(c). Since a certificate of copyright registration is *prima facie* evidence that the copyright is valid, it is well established that the burden of proving the invalidity of any such copyright protected movie will have shifted to the Defendant. *See, e.g. Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir. 1991); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985); *ABKCO Music, Inc. v. Sagan*, 2017 WL 3236443 at *4 (S.D.N.Y. July 31, 2017); *Encore Shoe Corp. v. Bennett Industries, Inc.*, 1991 WL 27412 at *1 (D. Mass. Feb. 25, 1991); *see also U2 Home Entertainment, Inc. v. Lai Ying Music & Video Trading, Inc.*, 04 Civ. 1233(DLC), 2005 WL 1231645 at *5 (S.D.N.Y. May 25, 2005) (defendants' unsupported assertion that plaintiff failed

to prove its chain of title to works could not defeat *prima facie* validity of certificates of copyright registration), *aff'd in part, vacated in part on other grounds sub nom*., 245 Fed.Appx. 28 (2d Cir. Apr. 9, 2007); *U2 Home Ent., Inc. v. Wei Ping Yuan*, 245 Fed.Appx. 28 (2d Cir. 2007) (summary order); *Bates v. Actors Heritage, Inc*., 85 Civ. 8962 (DNE), 1989 WL 206430 at *1 (S.D.N.Y. Jan. 18, 1989) ("Existence of the registration certificate, however, does not create an irrebuttable presumption of a valid copyright; it merely shifts to the defendant the burden of proving the copyright is not valid.").[5] The Defendant has failed to furnish any reciprocal discovery material which would impeach or contradict the validity of the Government's proffered certificates of copyright registration. To the extent the Defendant seeks to challenge the validity of any of the certificates, his unsupported assertion that any copyright is no longer in existence will not defeat the *prima facie* validity of the certificates.

**D. Testimony of Government's Case Agent**

Witnesses will testify during the Government's case in chief largely in a chronological order. The United States seeks to call Special Agent Loren Thresher as one of its first trial witness primarily for the limited purpose of admitting exhibits, most of which have been preliminarily determined to be authentic and to be business or public records within the meaning of Federal Rule of Evidence 803. The Government seeks to then recall Agent Thresher. He will be among the final witnesses in the Government's case in chief and will provide substantive testimony about later stages of the investigation. Since introducing business and public records into evidence and then later recalling the case agent during its case-in-chief will allow the Government to present its case in a "chronological, coherent manner," the Government is asking

[5] It has long been established civil precedent is instructive to criminal copyright statutes. *See, e.g. United States v. Cross*, 816 F.2d 297, 303 (7th Cir. 1987) ("In order to understand the meaning of criminal copyright infringement it is necessary to resort to the civil law of copyright."); *United States v. Wise*, 550 F.2d 1180, 1188 n.14 (9th Cir. 1977) (noting "general principle in copyright law of looking to civil authority for guidance in criminal cases").

for the Court's permission to call the Government's lead case agent, as explained above, as one of its first witnesses and then to recall the agent prior to resting near the end of its case in chief.

It is well established that trial courts are traditionally given broad discretion to determine the order of proof at trial. Fed.R.Evid. 611(a); *Huddleson v. United States*, 485 U.S. 681, 690 (1988); *United States v. Maddox*, 944 F.2d 1223, 1230 (6th Cir.), *cert. denied*, 502 U.S. 950 (1991); *United States v. Terry*, 729 F.2d 1063, 1067 (6th Cir.1984); *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074 (1980); *United States. v. Montgomery*, 126 F.2d 151 (3d Cir. 1942).[6] District Courts have the discretionary authority to allow a case in chief to proceed as the Government requests in the case at bar. *See United States v. Dent*, 984 F.2d 1453, 1463 (7th Cir.) (citing cases), *cert. denied*, 510 U.S. 858 (1993); Fed.R.Evid. 611(a).[7] In a case in which a defendant moved to prevent the Government from calling its case agent at "the beginning of its case in chief to provide general background information about fraudulent . . . schemes, then to recall [the] Special Agent . . . near the end of its case in chief to summarize the Government's evidence", a District Court denied the motion, holding that "such testimony is appropriate so long as it is based on evidence adduced at trial and the witness is subject to cross examination." *United States v. Stargell*, 2010 WL 11475579 at *3-4 (C.D. Cal. June 16, 2010). The Government's proposal for the case agent to introduce exhibits and provide foundational testimony and then be recalled to offer substantive testimony about later stages of the investigation will "be beneficial to the jury's following the government's case." *United States v.*

[6] Rule 611(a) of the Federal Rules of Evidence states the Court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a).

[7] Where the Government has not yet rested its case-in-chief, it is well established that a District Court may allow the Government to recall a witness "to supply a technical requirement or a detail overlooked by inadvertence," or to correct a minor inconsistency on a tangential matter. *United States v. Mackey*, 249 Fed.Appx. 420, 428 (6th Cir. Oct. 2, 2007); *see also United States v. Rodgers*, No. 93-5134, 1993 WL 330642 at *2 (6th Cir. Aug.30, 1993).

*Messino*, 873 F. Supp. 1177, 1182 (N.D. Ill. 1995); *see also United States v. McCall*, 85 F.3d 1193, 1196-97 (6th Cir. 1996) (district court did not abuse its discretion by permitting Government to recall case agent).

In the present case, the Court has already made a preliminary determination that certain exhibits are authentic and are either business or public records. The United States seeks at an early stage of the trial to establish the relevance of these same records and to move for their admission as well as for the admission of copies of websites used by the Defendant through the initial testimony of one of its first witnesses, Special Agent Loren Thresher. The Government then anticipates proceeding in roughly a chronological order with witnesses, concluding with the same case agent who will then describe his investigation including events which occurred in months immediately preceding return of the indictment. Separating primarily the introduction of exhibits through foundational testimony at the beginning of the Government's case in chief from the agent's more substantive testimony near the end of the Government's case will not consume additional time or resources because the agent would nonetheless provide the same testimony if he was limited to testifying in only one instance. Indeed, introducing exhibits through one case agent rather than using a piecemeal approach with a series of witnesses will be more efficient and avoid wasting time. Admission of business and public records pre-determined by the Court to be authentic and subject to a hearsay exception through Agent Thresher at an early stage will streamline the case and save time. The agent's remaining substantive testimony about his lengthy investigation will make more sense and better assist the jury in understanding the case if it is received after the testimony of other witnesses. **Attorney Stephen Smith has informed the undersigned Assistant U.S. Attorney that the defense will not object to the Government's recalling of the case agent during its case in chief as described above.**

### E. Motions *In Limine*

On June 3, 2019, the Government filed its first motion *in limine* requesting a preliminary determination, as authorized by Federal Rule of Evidence 104, that certain Government trial exhibits are authentic and are, subject to a determination of relevance, admissible. On September 11, 2019, the Court granted the Government's motion or reserved judgment for all but five exhibits. The Government reserves the opportunity afforded by the Court to submit exhibits which are narrower in scope and/or redacted.

On July 30, 2019, the United States filed a second motion *in limine* requesting a preliminary determination, as authorized by Federal Rule of Evidence 104, that the Government will be permitted to introduce into evidence, pursuant to Federal Rule of Evidence 1006, and subject to a showing of relevancy, a chart which summarizes voluminous records showing online sales of DVD movies. The Court concluded that the summary chart accurately summarizes the source materials pending review of the final version presented during trial.

On August 12, 2019, the United States filed a third motion *in limine* requesting a preliminary determination, as authorized by Federal Rule of Evidence 104, that the Government will be permitted to introduce into evidence recorded audio files and transcribed email messages as evidence that the Defendant was placed by customers on notice. The Defendant responded in opposition on September 3. The Government filed its reply memorandum on September 10.

On August 29, 2019, the United States filed a fourth motion *in limine* requesting a preliminary determination, as authorized by Federal Rule of Evidence 104, that the Government will be permitted to introduce into evidence, pursuant to Federal Evidence Rule 1006 and subject to a showing of relevancy, a second chart which summarizes voluminous materials seized during execution of two Court-approved warrants authorizing searches of the Defendant's residence.

The Defendant filed its response in opposition on September 12, 2019 and the Government filed its reply memorandum on September 16, 2019.

On September 10, 2019, the Defendant filed a motion *in limine* to prohibit the use of five terms -- "piracy, pirate, thief, theft and stealing" -- to describe him or his actions. The United States filed its response to the Defendant's motion on September 11, 2019.

## VII. TESTIMONY OF DEFENDANT

To the extent that Douglas Gordon should choose to testify in his own defense, this Court may be required to limit the scope of his testimony. The Defendant can testify about his reformist theories of the law only to the extent he can show that those legal interpretations are relevant and do not confuse the issues, mislead the jury or cause undue delay. *See* Fed.R.Evid. 401-403.[8] "Mere disagreement with the law, in and of itself … does not constitute a good faith misunderstanding under the requirements of the law." *United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir. 1991). As a result, any theories advanced by the Defendant about reform of copyright law should be excluded as irrelevant, confusing, misleading and an improper encroachment on the Court's role in instructing on the law.

## VIII. PROPOSED JURY INSTRUCTIONS

The United States will file its proposed jury instructions separately in advance of trial as required by the Local Rules. In order to warrant a jury instruction on a specific theory of defense, the proposed instruction must, as a matter of law, accurately set forth the correct legal standard and a defendant must introduce sufficient evidentiary support for the elements of his or

[8] Three days before the defendant's initial appearance, he launched a gofundme website entitled, "Doug's Legal Fund – Fighting for your Internet!" in which he described himself as "an Copyright Reform Activist."

her defense theory. *United States v. Lopez-Lopez*, 282 F.3d 1, 18 (1st Cir. 2002); *see also* Fed.R.Crim.P. 12(e); *Tracey v. United States*, 739 F.2d 679, 682 (1st Cir. 1984), *cert. denied*, 469 U.S. 1109 (1985) (ruling on the precursor rule, Fed.R.Crim.P. 12(f)). The evidence adduced at trial, taken in the light most flattering to the accused, must plausibly support such a theory. *See United States v. Gamache*, 156 F.3d 1, 9 (1st Cir.1998); *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir.1988). The Defendant has created a website with which to raise money for his defense entitled, "Doug's Legal Fund – Fighting for your Internet!" *See* Govt. Exh. No. 1.[9] He described himself on the website as a "Copyright Reform Activist". The Defendant appears to be motivated by a desire to change the copyright laws which currently exist in the United States.

A defendant is not entitled to a jury instruction on an invalid defense theory or a valid theory devoid of evidentiary support. *United States v. Yarborough*, 527 F.3d 1092, 1100 (10th Cir. 2008); *see also United States v. McGill*, 953 F.2d 10, 12 (1st Cir. 1992) ("a defendant has no right to put words in the judge's mouth. So long as the charge sufficiently conveys the defendant's theory, it need not parrot the exact language that the defendant prefers"); *United States v. Nivica*, 887 F.2d 1110, 1124 (1st Cir.1989) ("judges need not parrot the precise wording of a defendant's proffered instructions"), *cert. denied*, 494 U.S. 1005 (1990). The burden is on the Defendant, as the proponent of any theory, to identify evidence adduced during trial that suffices to satisfy this standard. *United States v. Ramos-Paulino*, 488 F.3d 459, 462 (1st Cir. 2007); *United States v. Rodriguez*, 858 F.2d 809, 814 (1st Cir. 1988). The undersigned Assistant U.S. Attorney will seek to confer in advance of trial with Attorney Smith in an attempt to reach

---

[9] The gofundme website was created on January 28, 2019, three days before the Defendant's initial appearance. In addition to stating that "Doug Gordon is organizing this fundraiser", the Defendant added the following: "I am an Copyright Reform Activist and things are getting real active …" *See* Govt. Exh. No. 1.

an agreement regarding any instruction proposed by the defense. To the extent that the defense seeks an instruction regarding copyright reform, any other invalid defense theory or a valid theory devoid of evidentiary support, the Government reserves its right to assert the Defendant has failed to meet his burden of raising a triable issue through the introduction of evidence sufficient to support any such proposed instruction.

## IX. WITNESSES WHO POSSESS SPECIALIZED KNOWLEDGE AND SKILL

The United States intends to call Kevin Casey of the Motion Picture Association of America (MPAA) to opine based on the presence or absence of certain indicators and his firsthand observations of DVD-R discs which were purchased from the three websites referenced in the superseding indictment and of DVD-R discs which were seized from the residence of the Defendant that the DVD-R discs are counterfeit. The United States is also prepared to call additional witnesses who have specialized knowledge and skill. The Government has provided notice to the defense of its plans to call the following copyright holders or copyright holder representatives as witnesses at the trial of the above-captioned case: Chalmers Adams (*The Grey Fox*), Alfred Cooper (*The Mutilator*), Rebecca Holland Campbell (*Babes in Toyland*), Mary Fossier (*Mr. Boogedy/Bride of Boogedy*), Jason Rosen (*The Night They Saved Christmas*) and Rusty Selmont (*Rad*). Each of these witnesses is an attorney who has anti-piracy responsibilities.

Defense counsel has been informed that the United States anticipates the above copyright holders or their representatives may depending upon the asserted defense testify based on experience, motion picture industry knowledge and/or anti-piracy responsibilities about one or more of the following: costs or approximate costs of producing the respective movies; provide examples of the necessity for or benefits of copyright protection which extends for 70 or more

years such as sequels and remakes; descriptions of terms and circumstances under which VHS movies are reproduced in a DVD format; examples of uses of copyrighted material that require copyright holder permission; and actions typically taken in response to suspected infringement including cease and desist notices. Defense counsel has been further advised of expectation that the above witnesses will provide testimony regarding possession of copyrights and their knowledge of the movie industry including information about copyright registration and descriptions of authorized DVD reproduction. It is further anticipated one or more of the above copyright holder witnesses will testify -- based on comparing their authorized movie to a copy of a disc which had been obtained from the Defendant -- that the disc is not consistent with quality, cover art and packaging of any authorized movie reproduction.

Specifically, such witnesses will include A. B. Cooper, Jr., a practicing attorney, writer, producer, director and motion picture copyright owner whose testimony by virtue of his education and motion picture industry experience will include descriptions of the process of securing copyright protection and of authorizing third parties in writing to reproduce or distribute motion pictures and the standards which generally must be met by third parties to secure such authorization. The United States further intends to call G. Chalmers Adams, a lawyer and the President of Mercury Pictures whose primary field of practice includes intellectual property, especially copyrights and contracts. Testimony of Mr. Adams will include a description of information that is available to the pubic without any charge from the Library of Congress/U.S. Copyright Office which identifies the person or entity that registered the copyright of a motion picture in the United States. He will also describe the process of paying royalties and identify persons such as writers, movie directors, actors, actresses and composers of music including their successors in

interest who typically receive payment of royalties for their roles in movie production.

Dated this 16th day of September, 2019.

Respectfully submitted,

HALSEY B. FRANK
United States Attorney

**BY: /s/ JAMES M. MOORE**
JAMES M. MOORE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify on September 16, 2019 that I filed the TRIAL BRIEF OF THE UNITED STATES with the Clerk of Court using the CM/ECF system, which will cause a copy to be sent to the following attorney:

Stephen C. Smith, Esq., at ssmith@lipmankatz.com

Halsey B. Frank
United States Attorney

BY: /s/ James M. Moore
James M. Moore
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, Maine 04401
Tel: 207-945-0373
Jim.Moore@usdoj.gov