UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                         )<br>      Plaintiff, )<br>                         )<br>v.                        )<br>                         )<br>DOUGLAS GORDON     )<br>                         )<br>      Defendant. ) | No. 1:19-cr-00007-JAW |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a five-year term of imprisonment moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate failed to comply with the administrative exhaustion requirements of § 3582 before filing his motion.

**I.  BACKGROUND**

    **A.  Factual Background**

On January 17, 2019, a federal grand jury indicted Douglas Gordon for two counts of criminal copyright infringement, alleged violations of 17 U.S.C. § 506(a)(1)(B) and 18 U.S.C. § 2319(a).[1] *Indictment* (ECF No. 2.). On April 17, 2019, the grand jury issued a superseding indictment including the initial two counts of criminal copyright infringement and adding one count for a mail fraud scheme and artifice, an alleged violation of 18 U.S.C. § 1341. *Superseding Indictment* (ECF No. 44). A seven-day jury trial was held from October 21, 2019 to October 29, 2019, and

---

[1] A detailed account of the factual history can be found at *United States v. Gordon*, 37 F.4th 767, 769-70 (1st Cir. 2022).

on October 29, 2019, the jury issued a guilty verdict on all three counts. *Jury Verdict* (ECF No. 162).

At the December 22, 2020, Zoom sentencing hearing the Court made the following guideline calculations, grouping Counts 1, 2, and 3: Mr. Gordon's guideline sentencing range was from 108 to 135 months, the guideline term of supervised release was one year as to Counts 1 and 2 and one to three years as to Count 3, a fine range of $30,000 to $250,000, a mandatory special assessment of $300, and mandatory restitution. *Notice of Filing of Official Tr. of Proceedings* at 45:21-46:8 (ECF No. 222) (*Sentencing Tr.*); *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* (ECF No. 217). The Court sentenced Mr. Gordon to five years (60 months) imprisonment (36 months on Counts 1 and 2 and 60 months on Count 3 to be served concurrently), three years of supervised release, no fine, restitution in the amount of $554.90, and a $300 special assessment. *J.* at 2-3, 6 (ECF No. 216); *Sentencing Tr.* at 74:5-18. The Court recommended that Mr. Gordon be placed in a BOP facility that can assist his medical needs. *Sentencing Tr.* at 74:20-22. Mr. Gordon is now 55 years old and may be incarcerated at FMC Devens. Fed. Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (last visited March 27, 2023).[2]

---

[2] The Court uses "may be" because the BOP inmate locator states that Mr. Gordon is being held in UPS Lewisburg. Fed. Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (last visited March 28, 2023). All other indications, including Mr. Gordon's return address on his filing envelope (which the Court received on December 12, 2022), are that he is still at FMC Devens-Camp in Ayer, Massachusetts. As late as December 8, 2022, Mr. Gordon was seen for a clinical encounter at Health Services at Devens. *Gov't's Resp. to Mot. for Compassionate Release*. Attach. 6 at 1, *Med. Rs.* (ECF No. 244) (*Gov't's Opp'n*). Mr. Gordon has not filed a change of address from FMC Devens with the Court. The Court does not know why there is a difference between Mr. Gordon's location between the docket and the inmate locator. It may be that he was moved to UPS Lewisburg after the filings in this case and has not let the Court know or the information in the inmate locator may be wrong. In any event, Mr. Gordon's location does not affect the Court's ruling.

B.  **Procedural History**

On January 6, 2021, Mr. Gordon appealed his conviction and sentence to the Court of Appeals for the First Circuit, *Notice of Appeal* (ECF No. 218), arguing the sentencing calculation was faulty and there was insufficient evidence for counts one and two. *United States v. Gordon*, 37 F.4th 767, 769 (1st Cir. 2022) (ECF No. 227). On June 26, 2022, the First Circuit affirmed the judgment of the district court and upheld the verdicts and sentence. *Id.* at 775.

On August 1, 2022, Mr. Gordon filed a pro se motion for compassionate release.[3] *Mot. for Compassionate Release re: First Step Act* (ECF No. 230). On August 4, 2022, the Court appointed counsel for Mr. Gordon. *Appointment of Counsel and Scheduling Order* (ECF No. 233). On August 15, 2022, Mr. Gordon filed his intent to proceed on the initial petition. *Notice of Intent to Proceed on the Initial Petition* (ECF No. 234). On August 22, 2022, the Government responded in opposition to Mr. Gordon's motion for compassionate release. *Gov't's Resp. to Mot. for Compassionate Release* (ECF No. 235). Mr. Gordon replied on September 20, 2022. *Reply to Response* (ECF No. 239). On October 31, 2022, the Court issued a twenty-six-page order dismissing without prejudice Mr. Gordon's motion for compassionate release. *Order on Mot. for Compassionate Release* (ECF No. 242).

On December 12, 2022, Mr. Gordon filed a second motion for compassionate release. *Emergency Mot. for Compassionate Release Pursuant to 18 U.S.C. §*

---

[3]  Mr. Gordon satisfied the exhaustion requirement as to his August 1, 2022 motion because he submitted a request to the warden of FMC Devens for compassionate release on August 31, 2021, which was denied. *Mot. for Compassionate Release re: First Step Act*, Attach. 2, *Inmate Request for Compassionate Release Consideration* (ECF No. 230).

*3582(c)(1)(a)* (ECF No, 243) (*Def.'s Mot.*). On December 27, 2022, the Government responded in opposition to Mr. Gordon's motion for compassionate release. *Gov't's Opp'n* at 1-17. Mr. Gordon replied on January 6, 2023. *Reply to Response* (ECF No. 245) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Douglas Gordon's Motion for Compassionate Release

Mr. Gordon asserts that he has "several CDC risk factors that were known at the time of sentencing but what was not known was an additional potentially serious medical condition, recent changes in the sentencing laws that would directly affect his case, BOP's inability to provide health care and the additional threats and unknown factors of the ongoing COVID-19 variants." *Def.'s Mot.* at 1. He contends that his risk factors include "(1) High Blood Pressure[,] (2) Cardiovascular[,] (3) Immune Suppressed[, and] (4) History of Kidney Disease" and lists an additional concern that arose "after filing his first compassionate release" regarding "a persistent lump in his throat that had developed into a larger rigidity in the entire throat." *Id.* at 1-2. He further contends that "[w]hile he was eventually given a x-ray, it is now over six months later and no meaningful diagnosis or plan of treatment has been put forth" and "[t]hat lack of medical attention in combination with the widespread challenge the BOP is experiencing providing basic medical care to the inmate population should be considered in this new motion for a compassionate release." *Id.* at 2.

Mr. Gordon submits that "recent changes in the sentencing laws, in the form of the appellate decision, *United States v. Banks*, No. 19-3812, 20-2235 3d Cir. 2022 . . . removes any enhancement under 2B1.1 for 'intended' loss, instead of actual loss," which "means if Mr. Gordon was sentenced today, there would be no 14-point enhancement and therefore, the top of the guidelines would only be 30 months." *Id.* Mr. Gordon further submits that "with [g]ood [c]onduct [t]ime and First Step Earned Time Credits and time served, Mr. Gordon should have gone to [s]upervised [r]elease in October of this year," but "the BOP has failed to come up with accurate credits for the entire inmate population and continues to be a controversy 4 years after the First Step Act was passed." *Id.* Mr. Gordon insists that "[a]s of December 23, [2022,] Mr. Gordon will have been incarcerated for 18 months, therefore he has earned 9 months of Earned Time Credits." *Id.*

Addressing the § 3553(a) factors, Mr. Gordon contends that the nature and circumstances weigh in his favor because "[t]his case is the FIRST criminal copyright case regarding the Fair Use of Orphan Works in US History." *Id.* at 3-4. He further contends that "'[t]he victims need to be paid' factor is long fulfilled" and "([u]nder the new sentencing law) [t]he sentencing disparities between the defendants that have committed similar offense is even more unjust for Mr. Gordon since the only other defendant . . . only received probation, which, from information and belief, her sentence has already been modified." *Id.* at 4. He urges the Court "to conclude that the total equivalent of a 32-month (if properly calculated by the BOP) sentence of a 30-month (if properly calculated by the DOJ) sentence has sufficiently met the

5

purposes of sentencing after considering Mr. Gordon's extraordinary and compelling circumstances." *Id.* at 3.

### B. The Government's Opposition

The Government asserts that Mr. Gordon "presents circumstances that are neither extraordinary nor compelling, and that any application of the 3553(a) factors to the defendant's case argues strongly against early termination of his sentence." *Gov't's Resp.* at 1. It contends that Mr. Gordon's "claims about BOP actions and guideline calculations are neither factually supported nor the proper basis for relief under compassionate release." *Id.*

The Government argues that Mr. Gordon's motion is improper because he "failed to satisfy his burden of showing that he properly exhausted his administrative remedies within BOP in accordance with 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 10. The Government explains that Mr. Gordon "does not indicate, reference, or attach any documentation or RIS indicating he asked for relief on the grounds now brought to the Court." *Id.* at 11. According to the Government, "[u]ndersigned counsel has asked BOP for such documentation and none was identified . . . [and it is] improper for him to bring these new claims before the sentencing court without first presenting them to the Bureau of prisons for administrative action." *Id.*

In response to Mr. Gordon's COVID-19-related argument, the Government submits that "[a]s the pandemic has progressed, BOP has modified its plan to account for the conditions then affecting each institution, thus allowing for maximal continuity in programming, recreation, and visitation, BOP now has a tiered system

6

based on the COVID rate in the facility and the transmission rate in the community." *Id.* at 5.  The Government further submits that "there are currently no COVID-19 cases at FMC Devens . . . [i]nmates who want the vaccination receive it . . . [and t]he fact that the COVID-19 pandemic exists is not an extraordinary and compelling reason warranting release."  *Id.* at 11-12.

Regarding Mr. Gordon's medical conditions, the Government contends that Mr. Gordon has "the same conditions he had when sentenced less than two years ago, conditions the Court considered when crafting the sentence in this case."  *Id.* at 12. The Government further contends that Mr. Gordon's medical conditions "are not claims that come within the scope of the compassionate release statute" and "[t]o the extent [his complaints regard the conditions of his confinement,] they are cognizable as Eighth Amendment violations . . . [and] must be brought in the district of confinement under appropriate civil procedure."  *Id.* at 14.

In response to Mr. Gordon's argument that "there has been a recent change in sentencing law applicable to his case," the Government insists that "[t]his claim is flawed for several reasons . . . [including that] the guideline analysis cited is not applicable to [Mr. Gordon's] case."  *Id.*  According to the Government, "[t]he PSR makes clear that Gordon's loss calculation was based on actual loss, that is the amount actually paid by the mail-fraud victims who bought his fraudulently purveyed DVDs . . . and the defendant's cited case law is therefor[e] inapposite."  *Id.* The Government contends that Mr. Gordon "makes similarly misconstrued claims about his sentence calculation under the First Step Act . . . [and his] complaint about

7

the calculation of his release date does not [refer] to the relevant portions of the statute. *Id.* at 15. Finally, "[t]he government reasserts that the defendant's sentence was already on the low end in light of his course of conduct, and that a further reduction in sentence would not satisfy the aims of general or specific deterrence." *Id.* at 16.

### C. Douglas Gordon's Reply

Mr. Gordon submits that "[t]he cumulative effect of [his] existing medical conditions, a new medical issue and; the Bureau of Prisons ("BOP") inability to provide basic medical care and; the still uncertain COVID pandemic and; the new loss analysis in Fraud cases required under 2B1.1 guidelines are the reasons for this new [c]ompassionate release request." *Def.'s Reply* at 1. "Focusing instead on the new fact in this case, the persistent lump, rigidness of his throat and difficulty swallowing," Mr. Gordon asserts that this "new fact was bought up as an example of the BOP's inability to provide medical care" because he "brought the situation to the attention of the BOP medical department on 8-23-22, [and] the barium swallow x-ray was not done until 11/11/22." *Id.* at 2. He insists that "the issues with his throat started shortly after the 1st COVID vaccine shot, then chronically got worse with the 2nd vaccine shot" and "because Mr. Gordon had a medical reason for refusing the COVID booster, that refusal should not carry any weight in a determination for compassionate release." *Id.*

Regarding administrative exhaustion, Mr. Gordon contends that "[f]or existing medical conditions, the Administrative remedies were exhausted with the BOP as

8

documented in [his] 1st Compassion Release," and "[i]t would be futile to attempt to bring this up to the BOP management as the bulk of the argument is concerning the recent changes in the sentencing laws brought on by 'United States v. Banks' and the Supreme Court." *Id.* at 4. Regarding sentencing, Mr. Gordon contends that "[a]llowing the Government to 'cherry-pick' the commentary notes and thus, create an illusion of an astronomical number for purposes of sentencing goes against the intention of the Supreme Court." *Id.* at 3.

According to Mr. Gordon, he "accepted responsibility for copying and distributing with the explanation of his operation being the Fair Use . . . [which a]pparently the Government never considered this legal possibility during their 4 year crusade to convict [him]." *Id.* at 4. He insists that "[n]ow that there is finally a precedent that was decided in the fall of 2019 in Bangor, Maine, there is zero chance of Mr. Gordon repeating his offense. He witnessed the precedent setting show live with a front row seat," and he is "very repentant . . . [and] feels empathy for the 21 victims that felt defrauded by his actions." *Id.* at 4-5.

### III. LEGAL STANDARD

As Judge Hornby of this District cogently summarized:

> A federal judge can reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) under certain circumstances. First, the prisoner must make the request to the Warden of the prison where he is housed, and thirty days must pass. 18 U.S.C. § 3582(c)(1)(A). Second, the prisoner must show "extraordinary and compelling reasons." *Id.* § 3582(c)(1)(A)(i). Third, the judge must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable as well as applicable Sentencing Commission policy statements. *Id.* § 3582(c)(1)(A).

9

*United States v. Garcia*, No. 2:17-cr-100-DBH-01, 2020 U.S. Dist. LEXIS 225910, at *1-2 (D. Me. Dec. 2, 2020).  Regarding the first requirement, a prisoner may only file a motion for compassionate release after the prisoner "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .."  18 U.S.C. § 3582(c)(1)(A).

## IV.   DISCUSSION

"When inmates have filed a motion for compassionate release without previously complying with the exhaustion requirement, the Court's practice has been to dismiss the motions without prejudice."  *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *10 (D. Me. Feb. 3, 2021).  The Court permits these inmates to refile their motions after they have complied with the exhaustion requirement.  *See United States v. Ayotte*, No. 1:11-cr-00156-JAW, 2020 U.S. Dist. LEXIS 122626, at *3 (D. Me. July 13, 2020) ("The Court therefore DISMISSES without prejudice [the defendant's] Motion for Compassionate release . . . to allow him to refile, if he chooses to do so, once he has satisfied the exhaustion requirement").

Successive compassionate release motions must independently satisfy the exhaustion requirement.  *See United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) (concluding that an initial compassionate release motion was untimely for failure to exhaust because "Congress used clear language: all requests for compassionate release must be presented to the Bureau of Prisons before they are

10

litigated in the federal courts"); *United States v. Benoit*, No. 2:16-cr-00070-JDL, 2020 U.S. Dist. LEXIS 189746, at *4 (D. Me. Oct. 14, 2020) (applying the exhaustion requirement to an inmate's second motion for compassionate release); *United States v. Amparo*, No. 19-cr-10004-ADB, 2020 U.S. Dist. LEXIS 227640, at *3-5 (D. Mass. Dec. 4, 2020) (denying a second compassionate release motion with leave to renew because the prisoner had not shown that he had filed a second petition for release with the warden); *United States v. Robinson*, No. 19-00193-KD-B-11, 2020 U.S. Dist. LEXIS 218917, at *3-4 (S.D. Ala. Nov. 23, 2020) (denying a successive motion for compassionate release because the defendant failed to exhaust); *United States v. Iwai*, No. 15-cr-00723-DKW, 2020 U.S. Dist. LEXIS 204932, at *6 (D. Haw. Nov. 3, 2020) (denying a compassionate release motion for failure to exhaust remedies because "[e]xhausting administrative remedies on one occasion does not forever obviate the need to do so").

Construing the exhaustion requirement as motion-specific is consistent with § 3582(c)(1)(A)'s plain language and the broader statutory framework. As the Third Circuit noted, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added— and critical—importance." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Judge Sutton of the Sixth Circuit wrote:

> Preventing prisoners from charging straight to federal court serves important purposes. It ensures that the prison administrators can prioritize the most urgent claims. And it ensures that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist. These are not interests we should lightly dismiss or re-prioritize.

*United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020); *see also id.* at 835-36 ("The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk").

In the Court's view, the compassionate release statute reserves to the warden at USP Lewisburg or FMC Devens (wherever Mr. Gordon is currently being housed) the initial duty to assess Mr. Gordon's request for release, his health, and the conditions inside the prison. Even though Mr. Gordon made a similar request for release in August 2022, these factors may well have changed in the ensuing months and "the statute contemplates that the warden be given an opportunity to make an internal assessment based on then current conditions." *Cain*, 2021 U.S. Dist. LEXIS 20672 at *13.

"As a new motion for compassionate release," Mr. Gordon "must once again demonstrate compliance with the exhaustion requirement." *Id.* at *14. The Government maintains that the BOP has no record of Mr. Gordon filing a request for release under the First Step Act, *Gov't's Opp'n* at 11, and Mr. Gordon neither claims that he filed a request with the BOP nor indicates, references, or attaches any relevant documentation. In fact, Mr. Gordon contends that "the [a]dministrative remedies were exhausted with the BOP as documented in [his] 1st Compassionate Release" and "[i]t would be futile to attempt to bring this up to the BOP management." *Def.'s Reply* at 4. The Court concludes that Mr. Gordon has failed to exhaust his rights to appeal any denial by the BOP. Mr. Gordon's "one-time

12

compliance with the exhaustion requirement in August 2022 does not carry forward in perpetuity to all his subsequent compassionate release motions." *Cain*, 2021 U.S. Dist. LEXIS 20672 at *15.

## V.  CONCLUSION

The Court concludes that Mr. Gordon has not fully exhausted his administrative remedies and DISMISSES without prejudice Douglas Gordon's Motion for Compassionate Release (ECF No. 243).

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2023.