UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:19-cr-00007-JAW |
| | ) |
| DOUGLAS GORDON | ) |

**ORDER ON SECOND MOTION FOR COMPASSIONATE RELEASE**

The Court rejects a defendant's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because the 18 U.S.C. § 3553(a) factors counsel against his early release and he failed to present any "extraordinary and compelling reasons" for his early release.

**I.   BACKGROUND**

On January 17, 2019, a federal grand jury indicted Douglas Gordon for two counts of criminal copyright infringement, alleged violations of 17 U.S.C. § 506(a)(1)(B) and 18 U.S.C. § 2319(a).[1] *Indictment* (ECF No. 2). On April 17, 2019, the grand jury issued a superseding indictment including the initial two counts of criminal copyright infringement and adding a count for a mail fraud scheme and artifice, an alleged violation of 18 U.S.C. § 1341. *Superseding Indictment* (ECF No. 44). A seven-day jury trial was held from October 21, 2019 to October 29, 2019, and on the last day the jury issued a guilty verdict on all three counts. *Jury Verdict* (ECF No. 162).

---

[1]   A detailed account of the factual history may be found at *United States v. Gordon*, 37 F.4th 767, 769-70 (1st Cir. 2022).

1

On December 22, 2020, the Court sentenced Douglas Gordon to thirty-six months of concurrent incarceration on Counts I and II and sixty months of concurrent incarceration on Count III, one year of concurrent supervised release on criminal copyright infringement Counts I and II and two years of concurrent supervised release on mail fraud Count III, no fine, $554.90 in restitution, and $300 in special assessments. *J.* (ECF No. 216). According to the Bureau of Prisons' website, Mr. Gordon is due to be released on February 20, 2024. *See Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited 12/10/2023).

On August 1, 2022, Mr. Gordon filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a). *Def.'s Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(a)* (ECF No. 230). On October 31, 2022, the Court issued a twenty-six-page order, dismissing without prejudice Mr. Gordon's motion. *Order on Mot. for Compassionate Release* (ECF No. 242).

On December 12, 2022, less than six weeks after the Court's rejection of his motion for compassionate release, Mr. Gordon filed another order for compassionate release. *Emer. Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(a)* (ECF No. 243). The Government filed its opposition on December 27, 2022. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 244). Mr. Gordon replied on January 6, 2023. *Def.'s Reply to Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 245). On March 28, 2023, the Court dismissed Mr. Gordon's motion for compassionate release because he failed to exhaust administrative remedies. *Order on Mot. for Compassionate Release* (ECF No. 246).

On May 15, 2023, Mr. Gordon filed yet another motion for compassionate release. *Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)([A])* (ECF No. 247) (*Def.'s Mot.*). On June 5, 2023, Mr. Gordon filed an additional attachment to his May 15, 2023 motion for compassionate release. *Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(a)*, Attach. 1 (ECF No. 254) (*Def.'s Attach.*). On June 27, 2023, the Government filed its opposition. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 256) (*Gov't's Opp'n*). Mr. Gordon did not file a reply.

## II. THE PARTIES' POSITIONS

### A. Douglas Gordon's Motion

In his motion, Mr. Gordon acknowledges that his medical conditions are "well documented" and have not changed since his earlier requests for compassionate release. *Def.'s Mot.* at 2. But he says that his conditions of confinement have changed in that "Lewisburg RDAP Camp is laid out differently than Devens." *Id.* at 3. He writes that he is "required to WALK from the living quarters to the administration building which is over 300 yards (estimated) away several times a day and because everyone in prison is required to have a job, Mr. Gordon walks an additional 200 yards (again estimated) to the Power House five days per week." *Id.* (capitalization in original). Mr. Gordon says that "[t]his in conjunction with an artificial limb, which after nearly two years of incarceration, still has not been properly calibrated and creates extensive sores on his stump daily." *Id.* Mr. Gordon expressed concern about "a very serious chance of infection as the hot summer months approach." *Id.*

Next, Mr. Gordon cites *Kisor v. Wilkie*, 134 S. Ct. 2400 (2019) and *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022) to support his argument that "if he was sentenced today, in the 3rd circuit, he would not have been given 60 months with guidance from 'Kisor' and "Banks.'" *Def.'s Mot.* at 3.

Finally, he argues that the Court should consider his fair use of orphaned works and the "first of its kind" federal prosecution. *Id.* at 3. Mr. Gordon worries that federal courts will give "librarians and archivists long prison sentences because prosecutors can 'prove' criminal copyright infringement overrides 17 U.S.C. sections 107 & 108 with the help of the controversial 'Willfully Blind' doctrine." *Id.* at 3-4.[2]

### B.  The Government's Response

The Government notes that Mr. Gordon's administrative request for home detention does not mention the issues he is now raising in his pending motion for compassionate release. *Gov't's Opp'n* at 10-11. Citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021), the Government says that Mr. Gordon failed to mention the issues he is now raising before this Court before the Bureau of Prisons (BOP) and therefore is barred from proceeding for failure to fully exhaust his administrative remedies. *Gov't's Opp'n* at 10-11.

Next, the Government disputes Mr. Gordon's contention that there has been a change in the sentencing law applicable to his case. *Id.* at 11-12. Turning to Mr.

---

[2]   In his June 5, 2023 filing, Mr. Douglas explained his inability to copy the Warden's denial of his request for home confinement by saying that the prison copier is broken and that he would send a copy of the Warden's denial once he is able to make a copy. *Def.'s Attach.* at 1. In its response, the Government filed a copy of Mr. Douglas' request for home confinement and the Warden's response. *Gov't's Opp'n*, Attach. 1, *Admin. Remedy Resp.* (*BOP Resp.*) *& Reduction in Sentence Eligibility Review.* (*Def.'s BOP Req.*)

4

Gordon's arguments about his amputated leg, the Government notes that in fixing his original sentence, the Court considered the burden that his amputation would pose and therefore his current issues cannot be deemed extraordinary. *Id.* at 12. Finally, turning to the factors in 18 U.S.C. § 3553(a), the Government maintains that Mr. Gordon presents a danger to society because he has continued to argue that his conviction was unjust and illegal. *Id.* at 13-14.

## III.   DISCUSSION

### A.   Administrative Exhaustion

Mr. Gordon's request to the Bureau of Prisons (BOP) for compassionate release reads:

> I request to be considered for home detention[3] under the CARES ACT.
> I have many qualifying medical conditions, such as:
>
> 1) High Blood Pressure
> 2) History of Strokes
> 3) History of Kidney Disease
> 4) Right-leg AK Amputation.

*Def.'s BOP Req.* at 1. In its denial, the BOP concluded that "[a]ccording to your most recent medical review, you do not have a debilitated medical condition," explaining that his medical condition "is not a debilitating medical condition, your condition is not an incurable, progressive illness, and you do not suffer from a debilitating injury from which you will not recover." *BOP Resp.* at 1. The BOP wrote that Mr. Gordon

---

[3]   In Mr. Gordon's administrative request, he asks the BOP to release him to home confinement. *Def.'s BOP Req.* at 1. In his motion before this Court, he asks for a time served sentence. *Def.'s Mot.* at 4. In *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022), the First Circuit held that "'the absence of' any reference to modifying a defendant's location of confinement denotes that section 3582(c)(1)A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home." *Id.* at 59. Thus, at least as far as the relief Mr. Gordon requested of the BOP, the Court does not have the authority to grant it.

5

is "not completely disabled, and [is] able to perform activities of daily living and not totally confined to a bed or chair." *Id.* The BOP concluded that it "can provide conventional treatment to [his] medical concerns." *Id.*

A court may consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *United States v. Hassan*, No. 2:16-cr-00084-JDL, 2020 U.S. Dist. LEXIS 195468, at *3 (D. Me. Oct. 21, 2020)). Under First Circuit law, § 3582(c)(1)(A)'s exhaustion requirement is "a non-jurisdictional claim-processing rule." *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022). Administrative exhaustion is "mandatory unless waived or conceded by the Government." *United States v. Perez-Crisostomo*, 2023 U.S. Dist. LEXIS 96877, at *6 (D. Me. June 5, 2023) (citing *Hassan*, 2020 U.S. Dist. LEXIS 195468, at *3).

Here, Mr. Gordon's motion for compassionate release raises issues he failed to present to the BOP. In his motion, Mr. Gordon discusses *Kisor* and *Banks* and the allegedly "first of its kind" prosecution. He did not raise those issues with the BOP. In his request for BOP review, Mr. Gordon mentions his right leg amputation, but he similarly did not inform the BOP that he was having difficulty walking to and from his job or that his artificial limb was not properly calibrated and therefore was causing sores on his stump. Thus, although the BOP discussed his medical condition

6

generally, it did not respond to the specific issues Mr. Gordon now presses, nor could the BOP respond to these issues because Mr. Gordon did not raise them.

The First Circuit has not resolved whether a defendant may be barred from proceeding with a request for compassionate release if he failed to raise with the BOP the issues he is presenting to the district court. *United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"); *accord Texeira-Nieves*, 23 F.4th at 53 ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty. . . . we need not resolve that question today").

Other Circuit courts of appeal have resolved this issue. In 2021, the Seventh Circuit ruled that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578 (10th Cir. 2021).

If issue exhaustion applied to motions for compassionate release in the First Circuit, this Court would conclude that Mr. Gordon's motion for compassionate release is barred for failure to "fully exhaust[]" his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The essence of Mr. Gordon's medical claim for compassionate release involves issues uniquely within BOP's knowledge, such as the walking

7

distances between buildings at USP Lewisburg Camp – RDAP, the current condition of Mr. Gordon's stump, what the medical records reflect regarding these complaints, and whether the BOP could better accommodate Mr. Gordon's medical condition. But Mr. Gordon failed to mention these issues before the BOP. As the Seventh Circuit wrote in *Williams*, the purpose of the exhaustion requirement is "to afford prisons an opportunity to address issues before they are brought to the federal court." 987 F.3d at 703. Here, Mr. Gordon never presented the BOP with the issues he is now raising before this Court, did not afford them the opportunity to address them, and as such, he failed to "fully exhaust[] all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A). However, as issue exhaustion remains an open question in the First Circuit, the Court turns to the merits of Mr. Gordon's motion.

### B. Applicable 18 U.S.C. § 3553(a) Factors

Before reducing a sentence, the Court must find that "extraordinary and compelling reasons warrant" the movant's sentence reduction after considering the factors set forth in 18 U.S.C. § 3553(a)—to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i); *accord Texeira-Nieves*, 23 F.4th at 52 ("Next, the district court must consider any applicable 3553(a) factors and 'determine whether, in its discretion, the reduction … is warranted in whole or in part under the particular circumstances of the case'") (quoting *United States v. Saccocia*, 10 F.4th 1, 4 (1st Cir. 2021)). 18 U.S.C. § 3582(c)(1)(A) also requires any sentence reduction to be

8

"consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii).[4]

The Court, then, must begin by considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. These factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence," "to protect the public from further crimes," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"; (3) "the kinds of sentences available"; (4) "the kinds of sentencing and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

---

[4] In *United States v. Rivera-Rodríguez*, 75 F.4th 1 (1st Cir. 2023), the First Circuit noted that its caselaw had "clarified that, because (up until recently) the Commission had not issued any policy statements applicable to the prisoner-initiated motions for compassionate release, district courts 'ha[d] discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release.'" *Id.* at 18 n. 22.

In the time since, however, "the Sentencing Commission has promulgated new guidelines relevant for compassionate release motions, which we expect district courts to take heed of when determining whether an individual meets the statute's requirements for such relief." *Id.* (citing Amendments to the Sentencing Guidelines, U.S. Sentencing Commission (Apr. 27, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

The Court takes heed of this change. The Court notes the most recent amendment revises U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A). Given this amendment, the policy statement is now applicable to both defendant- and BOP-filed motions and consequently must be considered in this defendant-initiated motion.

9

similar conduct"; and (7) "the need to provide restitution to any victims in the offense." 18 U.S.C. § 3553(a)(1)-(7).

Both the nature and circumstances of the offense and the history and the characteristics of the defendant counsel against a reduction in sentence. For an extended period, Mr. Gordon flouted federal law, causing hundreds of thousands of dollars of losses for others through a copyright infringement scheme that included several people and three websites. Before and during trial and years later, even as his incarcerative sentence reaches its end, Mr. Gordon refuses to take responsibility for his actions. This reality gives the Court considerable pause.

The second § 3553(a) factor also counsels against reducing Mr. Gordon's sentence. As Mr. Gordon continues to deny his responsibility, the Court finds it highly improbable that reducing his sentence would "promote respect for the law," "afford adequate deterrence," or "protect the public from further crimes." This is all considered along with being able to provide Mr. Gordon with needed medical care. However, the BOP has indicated they can support his medical care for the short period of time before his release, limiting the need to reduce his sentence. Altogether, this factor also counsels against granting Mr. Gordon's motion.

The Court considers the third and fourth § 3553(a) factors, kinds of sentences available and the sentencing range applicable, while it discusses Mr. Gordon's medical needs below so it does not repeat that analysis here. *See infra* at 11-12.

The fifth § 3553(a) factor advises Courts to consider any relevant policy statements. The relevant policy statement here is U.S. Sentencing Guidelines

10

MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2023) (U.S.S.G).  It provides six categories of reasons courts should consider in determining whether extraordinary and compelling circumstances exist in a motion for a sentence reduction.  The Court addresses the policy statement below.  *See infra* at 11-12.

The sixth and seventh § 3553(a) factors are not applicable as there are no claims related to sentence disparities or restitution, so the Court does not consider them here.

Taken together, any relevant § 3553(a) factors counsel against reducing Mr. Gordon's sentence.

### C. The Merits of Douglas Gordon's Motion

#### 1. Medical Issues[5]

Regarding Mr. Gordon's amputation, the Court was aware of and considered Mr. Gordon's amputation in fixing his below-guideline sentence.[6]  *Tr. of Proceedings, Sentencing* 62:4-21, 72:13-22 (ECF No. 222).  Mr. Gordon faced a guideline sentence

---

[5] The third and fourth § 3553(a) factors require courts to consider the relevant sentencing options and sentencing ranges applicable.  The Court does so in this section as far as they are applicable.
    The fifth § 3553(a) factor requires that courts consider any relevant policy statements. The relevant United States Sentencing Commission policy statement provides six categories of reasons to consider when determining whether extraordinary and compelling reasons exist to reduce a sentence. These categories are the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) whether the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) whether the defendant received an "unusually long sentence." *Id.* at § 1B1.13(b).  The Court addresses the relevant category, Mr. Gordon's medical circumstances, in this section in compliance with the fifth § 3553(a) factor.
[6] Although Mr. Gordon does not raise his hypertension, history of strokes, and current kidney disease in his motion, he mentioned these other medical conditions in his administrative request. *Def.'s BOP Req.* at 1.  The Court considered these conditions when it imposed his below-guideline sentence as all these conditions are mentioned in the PSR.  *See* PSR ¶ 53.  The Court referred to his artificial right leg, strokes, and kidney failure during its recitation of his history and characteristics. *Tr. of Proceedings, Sentencing* 62:4-21 (ECF No. 222).

11

of 108 to 135 months, *Statement of Reasons* at 1 (ECF No. 217), and the Court, considering his amputation, imposed a sentence of only 60 months of incarceration. *J.* (ECF No. 216). Although the Court's sentencing consideration of these factors does not preclude compassionate release on the same basis, the Court is not convinced that Mr. Gordon presents "extraordinary and compelling reasons" that "warrant such a reduction." 18 U.S.C. § 3553(c)(1)(A). To buttress this conclusion, Mr. Gordon presented no corroboration of his current medical complaints, and certainly no medical records that correlate whatever issues he is having with his stump to the conditions at Lewisburg.

### 2. Intended or Actual Loss

Regarding Mr. Gordon's arguments about *Kisor* and *Banks*, the Court reviewed both cases and the First Circuit's response. In *Kisor*, the United States Supreme Court addressed judicial deference to an agency's interpretations of its own regulations. 139 S. Ct. at 2415. Following *Kisor*, in *Banks*, the Third Circuit concluded that "the loss enhancement in the Guideline's application notes impermissibly expands the word 'loss' to include both intended loss and actual loss." 55 F.4th at 250. In Mr. Gordon's case, the Probation Office (PO) found that the loss was $638,659.60, and he received a fourteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H). *See* PSR ¶ 31; *Statement of Reasons*, Attach. 1, *Findings Affecting Sentence* (ECF No. 217). The PO concluded that Mr. Gordon made $638,659.60 in sales from all three of his websites, which reflected the lost sales sustained by the victims in this case. PSR ¶ 19.

On August 9, 2023, the First Circuit addressed this issue in the context of a direct appeal. *United States v. Gadson*, 77 F.4th 16 (1st Cir. 2023). Faced with a sentencing in which the "intended loss was greater than the actual loss," *id.* at 20, the First Circuit affirmed a sentence based on intended loss. *Id.* at 23. In other words, after *Kisor* and *Banks*, the First Circuit concluded that the district court did not commit clear error by using intended loss. *Id.* at 22. The Court is bound by this precedent.

In addition, Mr. Gordon has not demonstrated why under *Banks*, his actual sales of copyrighted movies would not be an accurate reflection of the actual loss to his victims in lost sales. This is particularly true since the First Circuit addressed Mr. Gordon's objections to the loss calculations, rejected his contentions, and affirmed the fourteen-level increase loss calculation under U.S.S.G. § 2B1.1(b)(1)(H). *United States v. Gordon*, 37 F.4th 767, 772-73 (1st Cir. 2022).

### 3. Wrongful Conviction

Finally, the Court firmly rejects Mr. Gordon's insistence, even at this late stage, that his willful copyright infringements were somehow perfectly legal because they made fair use of so-called orphaned works or that Mr. Gordon was the innocent victim of prosecutorial vindictiveness. Mr. Gordon's decision to press these unfounded and judicially rejected allegations gives the Court considerable pause as to whether the sentence the Court imposed has sufficiently deterred him from future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B) ("The court, in determining the particular sentence to be imposed, shall consider . . . (2) the need for the sentence

imposed — (B) to afford adequate deterrence to criminal conduct"). His frivolous and repetitious arguments run hard against his early release.

## IV. CONCLUSION

The Court DENIES Douglas Gordon's Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 247).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of December, 2023