UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DOUGLAS GORDON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:19-cr-00007-JAW |
| ) | 1:23-cv-00343-JAW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 268.) Following a jury trial, Petitioner was convicted of copyright infringement and mail fraud; the Court sentenced Petitioner to sixty months in prison. (Judgment, ECF No. 216.) The First Circuit affirmed. *United States v. Gordon*, 37 F.4th 767 (1st Cir. 2022).

Petitioner claims the jury instructions regarding the concepts of "fair use" and "orphan works" were improper, the prosecutor made inflammatory comments during closing arguments, and his attorney provided ineffective assistance by failing to challenge those and other issues. The Government requests dismissal. (Response, ECF No. 302.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

From at least January 2014 through January 2019, Petitioner operated a small chain of video stores and several websites for renting and selling movies.  The purpose of the websites was to sell DVDs created from copies of VHS tapes containing movies that were not readily available in DVD format from other sources.  Rather than the hard plastic cases and disks containing artwork typical of mainstream DVD sales, Petitioner's disks were usually packaged in a small plain white envelope with a clear screen and appeared more like a disk "burned" at home with only a plain label containing the title of the movie.  Petitioner continued to sell the DVDs for many years, including after his employees received complaints from dissatisfied customers who believed they were purchasing a product sold by authentic or mainstream vendors, after copyright holders sent Petitioner cease-and-desist notices, and after government agencies notified him that he was the target of investigations.

In January 2019, Petitioner was indicted on two counts of criminal copyright infringement in violation of 17 U.S.C. § 506(a)(1)(B) and 18 U.S.C. §§ 2, 2319(a), and 2319(c)(1).  (Indictment, ECF No. 2.)  In April 2019, the grand jury returned another indictment containing the two counts of copyright infringement and adding one count of mail fraud scheme and artifice in violation of 18 U.S.C. §§ 1341 and 2.  (Superseding Indictment, ECF No. 44.)  At trial in October 2019, Petitioner did not challenge the Government's evidence regarding his conduct.  The defense focused on his state of mind;

---

[1] The facts are drawn primarily from the First Circuit's summary of the trial evidence, which Petitioner does not dispute.

Petitioner testified that he previously believed his sales were lawful pursuant to the concepts of fair use and orphan works either because Petitioner could not locate the copyright holder or because the work was not readily available to purchase in DVD format. (Trial Transcript at 1377–1521, ECF Nos. 173–80.) The jury found Petitioner guilty on all three counts. (Jury Verdict, ECF No. 162.)

At sentencing in December 2020, the Court calculated a loss of nearly $640,000, which produced a total offense level of thirty-one and, because Petitioner had no criminal history points, a guideline sentencing range of 108 to 135 months in prison. (Revised Presentence Investigation Report (PSR) ¶¶ 19–20, 37, 64, ECF No. 196; Sentencing Transcript at 45, ECF No. 222.) The Court sentenced Petitioner to thirty-six months in prison for the copyright infringement counts and sixty months in prison for the mail fraud count, to be served concurrently. (Sentencing Transcript at 74; Judgment at 2.)

On direct appeal, Petitioner argued that (1) the evidence was insufficient to support the willfulness element of criminal copyright infringement, and (2) the loss calculation at sentencing was erroneous; in June 2022, the First Circuit affirmed. *United States v. Gordon*, 37 F.4th 767, 769 (1st Cir. 2022). Petitioner sought Supreme Court review; in October 2022, the Supreme Court denied the petition for a writ of certiorari. *Gordon v. United States*, 143 S. Ct. 340 (2022). Petitioner filed the § 2255 motion less than one year later.

**DISCUSSION**

**A.     Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28.

Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also*

*Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Jury Instructions**

    **1.     Fair Use, Willfulness, and the Burden of Proof**

Petitioner claims that his attorney provided ineffective assistance[2] by failing to challenge the Court's jury instructions regarding the fair use doctrine.[3]  Petitioner does not challenge the Court's instructions on the four factors of the fair use doctrine.  Rather, Petitioner contends the Court's instruction that "[Petitioner] has the burden of proving any fair use by a preponderance of the evidence," (Trial Transcript at 1542), was based on civil copyright infringement cases that are inapplicable in a criminal copyright infringement case.  *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (noting that "fair use is an affirmative defense").  According to Petitioner, the jury instructions improperly shifted the burden of proving a willful copyright violation from the

---

[2] Throughout his motion, Petitioner raises both freestanding claims and ineffective assistance claims. Because he did not raise the freestanding claims at trial or on appeal, he procedurally defaulted those claims. Although Petitioner mentions actual innocence, he presents no new evidence bearing on his guilt or innocence.  The only potential avenue to establish cause and prejudice to excuse the procedural default, therefore, is ineffective assistance of counsel. The ineffective assistance standard thus governs each of Petitioner's claims for postconviction relief.

[3] Before describing each factor in further detail, the Court instructed the jury generally on the doctrine:

> One who is not the owner of a copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.
> 
> . . .
> 
> In determining whether the use made of the work qualifies as a fair use, you should consider the following factors: One, the purpose and character of the use, including whether such use is of a commercial nature or is for not-profit educational purposes; two, the nature of the copyright protected work; three, the amount and sustainability of the portion used in relation to the copyrighted work as a whole; and, four, the effect of the use upon the potential market for or value of the copyrighted work.

(Trial Transcript at 1541.)

Government to the defendant, in contravention of the Supreme Court's decisions in cases like *Cheek v. United States*, 498 U.S. 192 (1991), and *Smith v. United States*, 568 U.S. 106 (2013).

In *Cheek*, the Supreme Court considered the statute that provides that "any person 'who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof' shall be guilty of a felony." *Cheek*, 498 U.S. at 193 (1991). Although the traditional rule is that "ignorance of the law or a mistake of law is no defense to criminal prosecution . . . . [t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws." *Id.* at 199–200. For that reason, Congress "softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses" by using "the statutory term 'willfully'" to "carv[e] out an exception to the traditional rule." *Id.* at 200.

The Court held that willfulness requires a "voluntary, intentional violation of a known legal duty," which means the Government bears the burden of "negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Id.* at 202. While the jury can consider all evidence bearing on a defendant's likely knowledge sources when deciding whether to believe the defendant truly misunderstood

8

the law, the "objective" reasonableness of the alleged belief is not a question for the trial court to resolve. *Id.* at 202–03.[4]

In *Smith*, the Supreme Court decided which party bears the burden of proof on a criminal conspirator's statute of limitations defense against a prosecution occurring several years after the defendant previously withdrew from the conspiracy. *Smith*, 568 U.S. at 107. The Supreme Court reasoned:

> While the Government must prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged, proof of the nonexistence of all affirmative defenses has never been constitutionally required. The State is foreclosed from shifting the burden of proof to the defendant only when an affirmative defense does negate an element of the crime. Where instead it excuses conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.

*Id.* at 110 (quotation marks, citations, and modifications omitted). Because the statute of limitations "inhibits prosecution" but "does not render the underlying conduct noncriminal," it follows that "[c]ommission of the crime within the statute-of-limitations period is not an element of the conspiracy offense," and "[t]he Government need not allege the time of the offense in the indictment." *Id.* at 111–12. Therefore, "[e]stablishing individual withdrawal was a burden that rested firmly on the defendant regardless of when the purported withdrawal took place." *Id.* at 110.

---

[4] Courts employ essentially the same interpretation of the word "willfully" within the criminal copyright infringement statute. *See Gordon*, 37 F.4th at 773; *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013); *United States v. Moran*, 757 F. Supp. 1046, 1050 (D. Neb. 1991); *United States v. Acevedo-Cruz*, No. CRIM.04-0381(DRD), 2006 WL 448680, at *3 (D.P.R. Feb. 23, 2006).

The Supreme Court also cited prior cases addressing other defenses, like the "duress" defense in *Dixon v. United States*, 548 U.S. 1 (2006), and the "necessity" defense in *United States v. Bailey*, 444 U.S. 394 (1980). The Supreme Court noted that for certain crimes requiring more specific mental states, there may be cases "where the nature of the mens rea would require the Government to disprove the existence of [an affirmative defense] beyond a reasonable doubt," *Dixon*, 548 U.S. at 6 n.4, but the burden of proof remained on the defendant in both *Dixon* and *Bailey* because necessity or duress "does not negate a defendant's criminal state of mind" for a general intent crime requiring knowledge or intentionality, "instead, it allows the defendant to 'avoid liability because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" *Dixon*, 548 U.S. at 7 (2006) (quoting *Bailey*, 444 U.S. at 402) (modifications omitted).

Petitioner does not present any authority that suggests the absence of fair use is an element of the offense. In other words, Petitioner does not present any case where the Government was required to allege in an indictment the absence of fair use, and the statute of conviction does not mention fair use or explicitly assign the burden to the Government. *See Smith*, 568 U.S. 106, 112 (2013) ("Of course, Congress may choose to assign the Government the burden of proving the nonexistence of [the defense], even if that is not constitutionally required. It did not do so here"). As an initial matter, therefore, the Court's instruction on the burden of establishing the fair use defense was correct under the traditional common-law rule. On Petitioner's fair use argument, the burden of establishing

10

that his conduct was within the fair use exception "was a burden that rested firmly on the [Petitioner]." *Id.* at 110.

There is ample evidence in the record that supports a finding that Petitioner's conduct is not within the fair use exception. Petitioner not only conceded at trial that he had copied and distributed copyrighted works having the relevant value during the pertinent time period, he also arguably acknowledged that his conduct was not protected under the fair use doctrine. Throughout his testimony and during his attorney's arguments, the defense focused on Petitioner's assertion that he had made a good-faith mistake about the legality of his conduct:

> Q: As you sit there, having heard what you've heard, do you believe that you violated the copyright holders' rights?
>
> A: After going through this trial, I believe the -- that I made some mistakes and that I may have broke the law, yes.
>
> Q: At the time you did that, did you intend to do that?
>
> A: No.

(Trial Transcript at 1408).[5]

---

[5] *See also*, *id.* at 1518 ("I may have made some mistakes and I may have violated copyright law, but I never intended to hurt anybody"). In his opening statement, defense counsel argued:

> [Petitioner] had certain theories about why he was correct in doing what he did. . .
>
> [Petitioner] was careful to instruct his employees about at least his theories about how to comply with copyright law . . .
>
> The government has to prove each and every element of the offense, but the one element I'm going to ask you to focus on particularly is the willfulness. The government has to prove that [Petitioner] was acting willfully. And you're going to hear from lots of witnesses that show that [Petitioner] was trying his level best. Now, maybe, in hindsight, was his level best a good idea? Probably not, but he was trying. He wasn't acting willfully.

Finally, the jury instructions properly addressed the willfulness element in the context of what might be called Petitioner's "mistaken fair use" argument. As to the willfulness element of the copyright infringement counts, the Court instructed the jury as follows:

> The third element of the offense is that [Petitioner] acted willfully when he infringed the copyright. The word willfully, as the term is used in the superseding indictment or these instructions, means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed, that is to say, with bad purpose, either to disobey or disregard the law, not to act by ignorance, accident, or mistake. While a person must have acted with the intent to do something the law forbids before you can find the person acted willfully, the person need not be aware of the specific rule or law that his conduct may be violating. Moreover, [Petitioner]'s actions could be willful even if he only knew that the copying may be illegal, but did not know that it was to a certainty. At the same time, evidence of reproduction

---

(Trial Transcript at 46.) During his closing arguments, counsel contended:

> [Petitioner] sat there for almost two hours and admitted almost everything the government had against him. So why are we here? Oh, we're here because [Petitioner] didn't willfully violate the copyright. [Petitioner] might have been mistaken; [Petitioner] sat there and said, yeah, today, I think I made a few mistakes. Two weeks ago, I really thought I had the upper hand here. Two weeks ago, I believed I was in the right. . . And I believed, [Petitioner] said, based on my interpretation of the law, as mistaken as he might have been, that that allowed him to copy them for fair use.
>
> Today he told you, I think I was mistaken. But we didn't go through a week of trial because [Petitioner] is guilty. We went through a week of trial because the government bears the burden of proof, and [Petitioner] had his version of what happened, and we thank you for listening to it.
>
> . . .
>
> Ladies and gentlemen, you don't have to like what [Petitioner] did. You might even think that [Petitioner] acted inappropriately. You might think that he infringed the copyright. But the question is, did he do it willfully? And I suggest to you the evidence says, very clearly, he did not.

*Id.* at 1564–68.

> or distribution of a copyrighted work by itself is not sufficient to establish willful infringement of a copyright.
>
> . . .
>
> In deciding whether [Petitioner] acted knowingly for the third element, you may infer that [Petitioner] had knowledge of a fact if you find that he deliberately closed his eyes to a fact that otherwise would have been obvious to him. In order to infer knowledge, you must find that two things have been established: First, that [Petitioner] was aware of a high probability of the fact in question; second, that [Petitioner] consciously and deliberately avoided learning of that fact, that is to say, [Petitioner] willfully made himself blind to that fact. The willfulness requirement may also be satisfied if there is a showing that [Petitioner] deliberately disregarded a high probability that he was infringing copyrights. It's entirely up to you to determine whether he deliberately closed his eyes to a fact, and if so, what inference, if any, should be drawn. However, it is important to bear in mind that mere negligence, recklessness, or mistake in failing to learn the fact is not sufficient. There must be a deliberate effort to disregard or remain ignorant of the fact.

(*Id.* at 1540–41.)

A review of the jury instructions reveals no contradictions with the Supreme Court's decisions in *Bailey*, *Dixon*, *Cheek*, or *Smith* in the context of an asserted mistake of law. The instructions properly placed the burden of proving willfulness on the Government, including the burden of negating a genuine mistake of law. *See Gordon*, 37 F.4th at 773 ("in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful. Guilty knowledge can be inferred based on the defendant's disregard of warning signs sufficient to put a reasonably prudent person on inquiry notice. This standard aligns with the jury instructions given at [Petitioner's] trial") (quotation marks and citations omitted).

Petitioner also argues that counsel should have objected to the portions of the instructions that provide that the Government can satisfy its burden by showing that

Petitioner "willfully made himself blind" to the illegality or "deliberately disregarded a high probability that he was infringing copyrights," but the "willful blindness" instruction is in accord with language noted approvingly by the First Circuit. *See United States v. Brandon*, 17 F.3d 409, 451-52 & n.72 (1st Cir. 1995). Other courts have similarly concluded that "recklessness" and "willful blindness" "are valid theories for satisfying the intent element in this context." *United States v. Anderson*, 741 F.3d 938, 947–48 (9th Cir. 2013). [6]

Furthermore, there is no authority presented or argument present to establish that any other aspect of the instructions was improper. Accordingly, counsel did not perform deficiently when he did not present a meritless objection, and Petitioner suffered no prejudice from counsel's decision.

To the extent Petitioner intended to claim that counsel should have proposed a more specific or favorable instruction regarding the Government's duty to disprove beyond a reasonable doubt his asserted good-faith mistake of legal interpretation, the argument fails for essentially the same reasons. Shortly after the instructions on the willfulness element of criminal copyright infringement, at the beginning of the instructions on the mail fraud charges, the Court also instructed:

> [A]s before, an act or failure to act is willful if done voluntarily and intentionally, and with the specific intent to do something that the law

---

[6] The conclusions here are also consistent with the First Circuit's statements in its opinion on appeal in this case, but the conclusions are not based on the law of the case doctrine because the First Circuit qualified its statements about the jury instructions by noting that Petitioner did not challenge the instructions on appeal. *See Gordon*, 37 F.4th at 773.

> forbids, or with the specific intent to fail to do something the law requires to be done, that is to say, with bad purpose either to disobey or to disregard the law, not to act by ignorance, accident, or mistake. Thus, if [Petitioner] acted in good faith, he cannot be guilty of the crime. The burden to prove intent, as with all other elements of the crime, rests with the government.
>
> . . .
>
> The same definition of willfully that I described in the copyright counts applies to willfully in this mail fraud count.

(*Id.* at 1547–49.) Because the Court's overall instructions advised the jury of the Government's burden of proof on the willfulness element, including the Government's obligation to prove that Petitioner did not act under a good faith mistake of law, and because counsel was permitted to make and did make that argument throughout the trial, counsel did not act unreasonably by not requesting another redundant instruction to that effect, and Petitioner did not suffer any prejudice because of counsel's decisions.[7]

### 2. Orphan Works

Petitioner argues that the Court erroneously instructed the jury on the concept of orphan works by stating, "United States copyright law does not recognize the concept of orphan work." The full instruction regarding orphan works was as follows:

> There has been testimony in this case about the term orphan work, which has been defined as an original work of authorship for which a good-faith

---

[7] Even if the Court could find a deficiency with some portion of the instructions, given the very limited relevant legal authority within the context of criminal copyright infringement, including the lack of any cases finding deficient a court's instructions regarding the intersection of the fair use doctrine and a good-faith-mistake-of-law defense, the Court could not find that defense attorney's performance fell below that of reasonably competent counsel. Furthermore, even if the Court could find some deficiency in the instructions to support a finding of deficient performance, given the overwhelming evidence of repeated warnings and notices to Petitioner that he was violating copyright law over the course of many years, there is no basis on which the Court could find prejudice resulting from any potential ambiguity in the burden of proof regarding the alleged mistake of law. *See Gordon*, 37 F.4th at 773 ("There is overwhelming evidence" that Petitioner "deliberately closed his eyes to the illegality of his conduct" and "the jury could easily have found that he acted with actual knowledge that his conduct was illegal").

> potential user cannot readily identify and/or locate the copyright owner in a situation where permission from the copyright owner is necessary as a matter of law. United States copyright law does not recognize the concept of orphan work. Under United States copyright law, an orphan work is entitled to the same protections that govern all copyrighted work. If a work is copyrighted, a user may not use the concept of orphan work to use the work without violating the copyright.

(Trial Transcript at 1545.) According to Petitioner, 17 U.S.C. § 108 contradicts the Court's instruction. The provision provides special protection to libraries and archives to make certain copies of copyrighted works under limited circumstances, and the statutory criteria in several subparagraphs include phrases like the work "cannot be obtained at a fair price. . ." *Id.* §§ 108(c)(1), (e).

Petitioner's argument lacks merit. First, § 108 does not contain the words "orphan works" and only overlaps partially with the concept. More importantly, the Court's instruction was given in the context of an individual's criminal copyright prosecution and for the purpose of explaining terms and defenses such as public domain and fair use. *See generally*, *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning"). Because Petitioner was admittedly an individual motivated by commercial profit, not a library or archive operating for noncommercial purposes, § 108 was inapplicable in his case. The relevant provision within the jury instruction is fairly read as refuting the potential assertion that a work's status as an orphan work might on its

16

own excuse Petitioner's copying and distribution of that work. Petitioner has not shown any error on that substantive point.[8]

Because the underlying argument fails, counsel was not required to make a meritless objection, and Petitioner suffered no prejudice as a result of counsel's decision.

### 3. Fair Use and Mail Fraud

Petitioner argues that the jury instructions on fair use focused too narrowly on the copyright infringement charges and did not permit a fair use defense on the mail fraud charge. According to Petitioner, his fair use arguments were relevant to the mail fraud charge because if his copies constitute fair use, he was "authorized" under the law to sell and mail the DVDs. The argument is unpersuasive because the word "authorized" in the context of the testimony, arguments, and jury instructions meant the copyright owner's official product, or perhaps the industry standard product and packaging typical of mainstream vendors. Petitioner does not cite any examples where the word "authorized" was construed to mean a person's conduct was technically legal even though the person did not have the owner's permission.

The fair use issue was not necessarily a defense to the mail fraud charge because the fraudulent aspect of the business was marketing and selling unofficial, undecorated, "burned" DVDs as if they were the official or mainstream products that customers typically expected. The fair use defense had limited, if any, relevance to that issue. Because an

---

[8] The Court also properly instructed that the fair use analysis incorporates similar considerations as those that motivate the use of the term orphan works. (*See* Trial Transcript at 1543 (instructing that "out-of-print works that are no longer available for purchase through normal channels are more susceptible to fair use").)

objection would have lacked merit, counsel did not act unreasonably by not objecting, and Petitioner was not prejudiced because of counsel's decision.

C.   Prosecution's Use of the Term "Stealing"

Petitioner argues that it was improper for the prosecutor to use the word "stealing" at trial when describing Petitioner's conduct. Petitioner presents no authority prohibiting the use of that or similar words in the context of copyright infringement or other intellectual property cases. The Government is generally permitted to convey to the jury the moral theory underlying the prosecution, and the word chosen was not so inflammatory as to cause any significant unfair prejudice. *See Old Chief v. United States*, 519 U.S. 172, 187–88 (1997) (the prosecution is entitled "not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment"). Defense counsel, therefore, did not perform deficiently by not asserting an objection, and Petitioner was not prejudiced because of counsel's decision.

D.   Other Ineffective Assistance Claims

Petitioner raises other issues but each lacks merit. For example, Petitioner asserts that counsel should have called a copyright expert to testify at trial, but he does not explain what an expert witness would have said that would have been of assistance given that Petitioner conceded the conduct and legal error, and the defense focused instead on Petitioner's good-faith-mistake. Petitioner cites the mid-trial absence of a paralegal who was assisting with documents and exhibits, but Petitioner provides no evidence or explanation to demonstrate that counsel overlooked anything relevant in the paralegal's absence. Petitioner contends that counsel should have filed a Rule 29 motion or a motion

18

for judgment notwithstanding the verdict, but Petitioner has not established meritorious grounds for either motion. Finally, Petitioner alleges cumulative error from all the issues he raises, but because there was no error on any of the issues, the cumulative effect of the issues does not alter the analysis.

Because each of the other arguments is not adequately developed and otherwise lacks merit, Petitioner has not established deficient performance or prejudice.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of June, 2024.